PEOPLE v WHITE

Docket No. 94372. Submitted January 20, 1988, at Detroit. Decided
May 17, 1988. Leave to appeal applied for.

Carl L. White was convicted following a jury trial in the Record-
er's Court for the City of Detroit of five counts of first-degree
criminal sexual conduct and one count of breaking and enter-
ing with the intent to commit a felony. The trial court, War-
field Moore, Jr., J., sentenced defendant to two terms of 50 to
100 years imprisonment, two terms of 60 to 120 years imprison-
ment and one term of life imprisonment for the criminal sexual
conduct convictions and a term of 10 to 15 years imprisonment
for the breaking and entering conviction. Defendant appealed.

The Court of Appeals *held:*

1. Defendant's conviction of both the compound crime of first-
degree criminal sexual conduct and the predicate crime of
breaking and entering with intent to commit criminal sexual
conduct did not violate the double jeopardy provisions of the
United States or Michigan Constitutions. The criminal sexual
conduct and breaking and entering statutes involved herein
prohibit conduct that is violative of distinct social norms. The
first-degree criminal sexual conduct statute is not a statute
which incorporates most of the elements of the breaking and
entering statute and increases the penalty as compared to the
breaking and entering statute.

2. The prohibition against double jeopardy does not bar the
use of evidence of criminal sexual conduct upon a second victim
as the "other felony" supporting first-degree criminal sexual
conduct under MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) to ele-
vate criminal sexual conduct committed upon a first victim to
first-degree criminal sexual conduct.

3. Defendant waived his claim regarding the trial court's voir

References

Am Jur 2d, Criminal Law §§ 243 *et seq.*

Am Jur 2d, Trial §§ 573 *et seq.,* 934.

Limitations under double jeopardy clause of Fifth Amendment upon
state criminal prosecutions—Supreme Court cases. 67 L Ed 2d
831.

Taking and use of trial notes by jury. 14 ALR3d 831.

dire of the prospective jurors by failing to object and by expressing his satisfaction with the jury.

4. The trial court properly instructed the jury regarding the requisite elements needed to be proved in order for the jury to find that defendant was armed with a weapon for the purpose of MCL 750.520b(1)(e); MSA 28.788(2)(1)(e).

5. Defendant did not show prejudice sufficient to entitle him to a new trial in regard to his allegation that some of the jurors believed that the trial judge slept during the proceedings.

6. The trial court did not err by failing to give the jury a deadlocked jury instruction or by instructing the jury that they would not be allowed to take notes.

Affirmed.

1. CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The determination whether a defendant may be convicted of both the compound and predicate crimes depends on whether the Legislature intended multiple punishments; two factors help to determine legislative intent: first, whether the two statutes prohibit conduct which is violative of distinct social norms and, second, the amount of punishment expressly authorized by the Legislature.

2. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — CRIMINAL SEXUAL CONDUCT.

A defendant's right to protection from double jeopardy is not violated where he is convicted of both the compound crime of first-degree criminal sexual conduct in which sexual penetration occurs under circumstances involving the commission of any other felony and the predicate crime of breaking and entering with intent to commit criminal sexual conduct (US Const, Am V; Const 1963, art 1, § 15).

3. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — CRIMINAL SEXUAL CONDUCT.

The prohibition against double jeopardy does not bar the use of evidence of criminal sexual conduct committed by the defendant upon a second victim as the "other felony" which elevates criminal sexual conduct committed by the defendant upon a first victim to first-degree criminal sexual conduct (US Const, Am V; Const 1963, art 1, § 15; MCL 750.520b[1][c]; MSA 28.788[2][1][c]).

4. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

A verdict will not be set aside on the basis of alleged erroneous jury instructions which were not objected to in the trial court

unless it has resulted in a miscarriage of justice; a miscarriage of justice occurs when an erroneous instruction pertains to a basic and controlling issue in the case; even if jury instructions are somewhat imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights; the challenged instructions must be viewed in their entirety.

5. TRIAL — JURY — NOTES.

It is within a trial court's discretion to decide whether jurors may take notes and use them in their deliberations.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Herb Jordan*), for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and H. HOOD and N. J. KAUFMAN,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of five counts of first-degree criminal sexual conduct, MCL 750.520b(1); MSA 28.788(2)(1), and one count of breaking and entering with the intent to commit a felony, MCL 750.110; MSA 28.305. On May 21, 1986, defendant was sentenced to two terms of 50 to 100 years imprisonment, two terms of 60 to 120 years imprisonment and one term of life imprisonment for the criminal sexual conduct convictions and a term of 10 to 15 years imprisonment for the breaking and entering conviction. Defendant appeals as of right.

Defendant's convictions arose out of the sexual assaults on two women, Lula and Gabrielle, on

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

October 6, 1985, at Lula's home in Detroit. In the early morning hours of October 6, 1985, Lula awoke to the sound of breaking glass. She sat up and saw a tall, dark man standing at the foot of her bed. The man held nunchaku (karate sticks) in his hand. The man directed the women to perform sexual acts upon each other. In addition, defendant had oral and genital sex with both women.

Defendant was convicted of three counts of first-degree criminal sexual conduct based on the sexual penetration of Lula under circumstances involving the commission of any other felony, MCL 750.520b(1)(c); MSA 28.788(2)(1)(c). The court instructed the jury that the "other felony" could be either the breaking and entering with intent to commit criminal sexual conduct or the criminal sexual conduct committed upon Gabrielle. The convictions of two counts of criminal sexual conduct involving Gabrielle were obtained under MCL 750.520b(1)(e); MSA 28.788(2)(1)(e), which proscribes penetration while the actor is armed with a weapon or an article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

Defendant raises six issues on appeal. We will discuss them in the order in which defendant presents them.

I

A

DID DEFENDANT'S CONVICTION OF THE COMPOUND CRIME OF FIRST-DEGREE CRIMINAL SEXUAL CONDUCT, MCL 750.520b(1)(c); MSA 28.788(2)(1)(c), AND THE PREDICATE CRIME OF BREAKING AND ENTERING, MCL 750.110; MSA 28.305, VIOLATE THE CONSTITUTIONAL PROHIBITION AGAINST DOUBLE JEOPARDY?

MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) states:

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (c) Sexual penetration occurs under circumstances involving the commission of any other felony.

Defendant claims that the protection against double jeopardy under the United States and Michigan Constitutions[1] was violated when he was convicted of both the compound crime of first-degree criminal sexual conduct and the predicate crime of breaking and entering with intent to commit criminal sexual conduct. We disagree.

This issue was addressed in *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984). In *Robideau*, the Court analyzed whether the prohibition against double jeopardy was violated where the defendants were convicted of both first-degree criminal sexual conduct, MCL 750.520b(1)(c); MSA 28.788(2)(1)(c), and the predicate crimes of armed robbery and kidnapping. The Court rejected the *Blockburger*[2] test of double jeopardy and held that the determination whether the defendants could be convicted of both the compound and predicate crimes depends on whether the Legislature intended multiple punishments. *Robideau, supra,* p 486. In determining legislative intent, the Court specified two factors. The first factor is whether the two statutes prohibit conduct which is violative of distinct social norms. If so, the statutes can

---

[1] US Const, Am V; Const 1963, art 1, § 15.

[2] *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

generally be viewed as separate and amenable to permitting multiple punishments. *Id.,* p 487. Regarding this factor in the instant case, we feel that the statutes pertaining to criminal sexual conduct and breaking and entering with intent to commit a felony prohibit conduct that is violative of distinct social norms. The focus of first-degree criminal sexual conduct is on penetration. *Id.,* p 488. The focus of breaking and entering is clearly on forced entry into a dwelling or building.

The second factor the *Robideau* Court used in determining legislative intent was the amount of punishment expressly authorized by the Legislature. Regarding this factor, the Court stated:

> Our criminal statutes often build upon one another. Where one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes. The Legislature has taken conduct from the base statute, decided that aggravating conduct deserves additional punishment, and imposed it accordingly, instead of imposing dual convictions. [*Robideau, supra,* pp 487-488.]

Such is not the case with breaking and entering and criminal sexual conduct. The first-degree criminal sexual conduct statute is not a statute which incorporates most of the elements of the breaking and entering statute and increases the penalty as compared to the breaking and entering statute. While this aspect of the double jeopardy clause is violated by prosecutions for both larceny over $100 and larceny in a building, for example, we do not believe it applies to the two crimes in the instant case.

After determining the Legislature's intent

through the use of the two factors, the *Robideau* Court determined that the double jeopardy clause did not prohibit convictions for both first-degree criminal sexual conduct and armed robbery or kidnapping. *Robideau, supra,* p 490.

Defendant claims that the analysis of *Robideau* calls for a different result when the predicate crime is not a coequal felony, i.e., a felony with the same punishment. Defendant points to the language in footnote 8 of the *Robideau* opinion, which states:

> This analysis is consistent with the result reached in *People v Wilder* [411 Mich 328; 308 NW2d 112 (1981)] prohibiting dual convictions of first-degree felony murder and the predicate felony. Since felony murder is punishable by a mandatory life sentence, while the predicate felonies are punishable by no more than a term of years up to life, it may be inferred that the Legislature intended to punish a defendant only once for committing both crimes. While someone in the process of committing a predicate felony has a real disincentive to commit murder (mandatory life) even absent the threat of dual convictions, the same person, assuming the predicate felony carries an up-to-life maximum penalty, would have no such disincentive *to* commit criminal sexual conduct *unless* dual convictions are imposed. [*Robideau, supra,* p 489, n 8. Emphasis in original.]

We note that such language is dicta. We do not feel that the length of imprisonment is determinative and we do not read this language as holding that, whenever a predicate crime has punishment less than the compound crime, the defendant may not be convicted of both the predicate and compound crimes. Rather, according to *Robideau,* all factors must be considered in determining legislative intent.

Thus, we conclude that the prohibition against double jeopardy is not violated by convictions of both first-degree criminal sexual conduct under MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) and the predicate crime of breaking and entering with intent to commit criminal sexual conduct.

B

CAN THE "OTHER FELONY" BE THE CRIMINAL SEXUAL CONDUCT UPON GABRIELLE?

In this subissue, defendant claims that the "other felony" used to support a conviction for criminal sexual conduct upon Lula under MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) cannot be the criminal sexual conduct upon Gabrielle. Defendant points to the language of *People v Pettway,* 94 Mich App 812, 817; 290 NW2d 77 (1980), lv den 411 Mich 1083 (1981), in which this Court stated:

> As the prosecution correctly argues, felony, as construed in the phrase "any other felony," refers to any felony *other* than criminal sexual conduct. [Emphasis in original.]

In *Pettway,* this Court held that breaking and entering with intent to commit criminal sexual conduct falls within the "any other felony" portion of the statute.[3] *Pettway, supra,* p 818. Whether criminal sexual conduct upon a *second* person can be the "other felony" supporting first-degree criminal sexual conduct under MCL 750.520b(1)(c); MSA 28.788(2)(1)(c) was not at issue in *Pettway.* There is nothing in the statute which precludes the use of

[3] This Court was not faced with a double jeopardy issue in *Pettway.* This Court only had to decide whether breaking and entering with intent to commit criminal sexual conduct could be the predicate crime for first-degree criminal sexual conduct under MCL 750.520b(1)(c); MSA 28.788(2)(1)(c). Thus, the case is not helpful to the resolution of issue I(A), *supra.*

evidence of criminal sexual conduct upon another person for such purpose. We read "any other felony" as meaning a felony other than the one committed. Thus, the prohibition against double jeopardy does not bar the use of evidence of criminal sexual conduct upon another victim as the "other felony" which elevates the criminal sexual conduct committed upon the first person to first degree.

## II

### DID THE TRIAL JUDGE'S VOIR DIRE OF THE PROSPECTIVE JURORS DEPRIVE DEFENDANT OF A FAIR TRIAL?

Defendant claims the voir dire of the prospective jurors by the court deprived defendant of a fair trial. However, we find that defendant has waived this issue by failing to object to the court's voir dire and in expressing his satisfaction with the jury. *People v Duerson,* 35 Mich App 223, 225; 192 NW2d 309 (1971).

## III

### DID THE TRIAL JUDGE ERR IN HIS INSTRUCTIONS REGARDING THE REQUISITE ELEMENTS NEEDED TO BE PROVED IN ORDER FOR THE JURY TO FIND THAT DEFENDANT WAS ARMED WITH A WEAPON FOR THE PURPOSE OF MCL 750.520b(1)(e); MSA 28.788(2)(1)(e)?

Defendant takes issue with the following remark made by the court to the jury:

> With reference to [Gabrielle], it is claimed that the same statute pertains, only the section that applies to her is the actor, meaning the Defendant or the person who is the wrongdoer, is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it —reasonably believe it to be a weapon. And it is

alleged that the instances occurred with reference to [Gabrielle] under those circumstances, *that she believed that the Defendant was armed with a weapon or an article used or fashioned in a manner to reasonably make her believe it was a weapon.* [Emphasis added.]

Defendant did not object. Later, the court instructed the jury as follows:

With reference to [Gabrielle], the second element that the People must prove, is that at the time, the *Defendant was armed with a weapon or an article used or fashioned in a manner to lead the victim,* the victim being [Gabrielle], *reasonably to believe it to be a weapon.* A weapon is anything which the person assaulted reasonably believes could cause physical injury or death in the manner in which it is used.

\* \* \*

As I said to you, really, the reading of them, in many respects, sounds the same as first degree. But remember, there is a distinctive difference and the difference is indeed that the matter of whether a weapon was used or the Defendant—or the victim thought a weapon—that the Defendant was armed with a weapon or whether or not either, with reference to [Lula], whether or not a felony was carried on at the same time.

\* \* \*

It is for you to determine from all of the facts and circumstances disclosed by the evidence *whether there was a dangerous weapon in question here* or whatever was used, the Nunchuck sticks [sic], if you believe there were such things, were, indeed, were a dangerous weapon.

I will tell you that a gun or a firearm is, by definition, and statute, a dangerous weapon, ladies and gentlemen. [Emphasis added.]

Unless an objection is made to an alleged error

in the instructions, a verdict will not be set aside on the basis of such error unless it has resulted in a miscarriage of justice. *People v Federico,* 146 Mich App 776, 784-785; 381 NW2d 819 (1985), lv den 425 Mich 867 (1986). A miscarriage of justice occurs when an erroneous instruction pertains to a basic and controlling issue in the case. *Id.,* p 785. Even if jury instructions are somewhat imperfect, there is no error if they fairly presented to the jury the issues to be tried and sufficiently protected the rights of the defendant. *Id.* Challenged jury instructions must be reviewed in their entirety. *Id.; People v Ritsema,* 105 Mich App 602, 609; 307 NW2d 380 (1981), lv den 413 Mich 934 (1982).

Defendant claims the first set of instructions could have caused the jury to think that Gabrielle need only have believed defendant to have had a weapon, rather than that defendant actually had a weapon. Although the court's first remark was slightly confusing, we do not find it error requiring reversal in light of defendant's failure to object and in light of the rule that jury instructions must be viewed in their entirety. Viewed in their entirety, the instructions correctly informed the jury that they could find defendant guilty only if he actually was armed with a weapon or an article used or fashioned in a manner to lead Gabrielle reasonably to believe it to be a weapon. Reversal is not required.

IV

IS DEFENDANT ENTITLED TO A NEW TRIAL WHERE SOME OF THE JURORS PRESUMABLY BELIEVED THAT THE TRIAL JUDGE SLEPT DURING THE PROCEEDINGS?

After the jury rendered its verdict, the trial

judge included the following in his final comments to the jury:

> I want to assure all of you in case—I understand some of you had some concerns. I never fell asleep. I never go to sleep. So, I mean, when my job was over with the voir dire, I did lean back and do try [sic] to stay in low profile. I try to stay out of the case and let the attorneys do their job.
>
> If any of you were concerned that I was asleep, the answer is, no, I wasn't sleep and I heard everything that is to be heard. While I do lean back, I am not so different than other judges. Judges have been wont to fall asleep. That is not my concern. I didn't.

Defendant argues on appeal that the jurors' perception that the judge slept during the proceedings might have affected the "quality of justice" and, thus, he is entitled to a new trial. We disagree.

Defendant analogizes the situation to one in which the trial judge was absent from the courtroom during the proceeding. In *People v Morehouse,* 328 Mich 689, 692; 44 NW2d 830 (1950), cert den 341 US 922; 71 S Ct 739; 95 L Ed 1355 (1951), the Court held that a trial judge's absence from the courtroom at any stage of the proceeding is not error requiring reversal unless it is shown to have prejudiced the defendant. In the present case, the judge properly responded to the parties' objections and issues raised during trial. Defendant never objected to the judge's demeanor. Moreover, other than the judge's comment that he understood that, in essence, some of the jurors thought that he was asleep, there is no indication that the jurors thought that the judge was asleep. More important, the judge was not asleep. Defendant has not shown prejudice sufficient to entitle him to a new trial.

V

### DID THE TRIAL JUDGE ERR BY FAILING TO GIVE THE JURY A DEADLOCKED JURY INSTRUCTION?

In *People v Holmes,* 132 Mich App 730, 747; 349 NW2d 230 (1984), this Court stated that "*when* a jury becomes deadlocked" ABA Standard Jury Instruction 5.4 is the proper instruction. (Emphasis added.) In the instant case, the jury was deadlocked when it sent the court a note stating it was deadlocked. The court thereupon stated it would give the deadlocked jury instruction. However, after waiting for defense counsel to appear, the jury indicated it had made some progress and the court stated it was unnecessary to give the deadlocked jury instruction. We find no error, as the jury was no longer deadlocked at that point.

VI

### DID THE TRIAL JUDGE ERR BY INSTRUCTING THE JURORS, DURING PRELIMINARY INSTRUCTIONS, THAT THEY WOULD NOT BE ALLOWED TO TAKE NOTES?

We find no error in the court's preliminary instruction to the jury that they could not take notes. Defendant did not object and on appeal does not show how this prejudiced him. It is within the trial court's discretion to decide whether jurors may take notes and use them in their deliberations. *People v Young,* 146 Mich App 337, 340; 379 NW2d 491 (1985).

Affirmed.