*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 07-1522

QUINCY DONELL BARTEE,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00242—Richard A. Enslen, District Judge.

Argued: April 29, 2008

Decided and Filed: June 10, 2008

Before: GUY, SUHRHEINRICH, and COLE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Richard D. Stroba, FEDERAL PUBLIC DEFENDER OFFICE, Grand Rapids, Michigan, for Appellant. Elisa Castrolugo, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Richard D. Stroba, FEDERAL PUBLIC DEFENDER OFFICE, Grand Rapids, Michigan, for Appellant. Elisa Castrolugo, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

RALPH B. GUY, JR., Circuit Judge. Defendant Quincy Donell Bartee pleaded guilty to one count of being a felon in possession of a firearm and was sentenced to a 43-month term of imprisonment. The only issue on appeal is whether it was error to find that defendant's prior felony conviction for attempted criminal sexual conduct in the second degree (CSC-2) constituted a "crime of violence" that would justify a base offense level of 22 rather than 20. UNITED STATES SENTENCING GUIDELINES MANUAL (USSG) § 2K2.1(a)(3) and (4) (2006). After review of the record, and in light of the recent decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), we vacate defendant's sentence and remand for resentencing consistent with this opinion.

## I.

On July 6, 2006, police officers were called to 435 Amity Avenue, Muskegon, Michigan, a house in which defendant was renting a room. Police responded to a complaint by one of

defendant's housemates against two others who were trying to evict her. The officers secured an agreement allowing the complainant to store her belongings at the house and left, only to be called back when the complainant reported being threatened with a shotgun. A search of the premises resulted in the discovery of a sawed-off Mossberg .12 gauge shotgun in a bedroom closet. One resident explained that the shotgun belonged to the defendant, who was in jail at the time. When questioned, defendant said he found the shotgun and took it back to his room. Defendant, then 23 years of age, had not completed high school. Defendant had one prior felony conviction—attempted CSC-2—that served both as the predicate for the felon-in-possession charge and as the "crime of violence" for guideline purposes.

Charged in a two-count indictment, defendant pleaded guilty to being a felon in possession of a firearm. There is no dispute that since the shotgun was one having a barrel of less than 18 inches as described in 26 U.S.C. § 5845(a), the applicable base offense level would be 22 if the prior conviction qualified as a "crime of violence." USSG § 2K2.1(a)(3). Over defendant's written objections to the higher base offense level, the district court agreed with the government that the prior conviction qualified as a "crime of violence." An additional two-level increase in the offense level for the shotgun having been reported stolen was offset by a three-level decrease for acceptance of responsibility. USSG § 2K2.1(b)(4) and § 3E1.1(a) and (b). Defendant was assessed five criminal history points: two points for the attempted CSC-2 conviction, two points because the instant offense was committed while on probation from that conviction, and one point because the instant offense was committed within two years of release from custody on that conviction. USSG § 4A1.1(b), (d), and (e). With a total offense level of 21 and criminal history category III, the guideline range was 46 to 57 months.[1] After considering the relevant sentencing factors under 18 U.S.C. § 3553(a), the district court selected a sentence at the bottom of the guideline range, gave defendant credit for the three months he was held in state custody in connection with this offense, and sentenced defendant to a term of 43 months of imprisonment to be followed by three years of supervised release. This appeal followed.

## II.

Sentences imposed post-*Booker* are reviewed for reasonableness—including for procedural error in the calculation of the guideline range such as defendant asserts in this case. *Gall v. United States*, 128 S. Ct. 586, 596 (2007); *United States v. Booker*, 543 U.S. 220, 261 (2005). We review *de novo* the district court's conclusion that the defendant's prior conviction constituted a "crime of violence." *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005) ("This Court reviews a district court's conclusion that a crime constitutes a violent felony under the ACCA or a crime of violence under the ACCA's parallel provision in the Guidelines *de novo*.").

The term "crime of violence" in USSG § 2K2.1 is defined by cross-reference to USSG § 4B1.2(a), which provides as follows:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> (1)      has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)      is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

---

[1]Without the 2-level increase, the guideline range would have been 37 to 46 months.

In making this determination, "the offense of conviction (*i.e.*, the conduct of which the defendant was convicted) is the focus of inquiry." § 4B1.2, comment n.2. It is clear as well that the term "crime of violence" encompasses aiding and abetting, conspiring, and attempting to commit such offenses. USSG § 4B1.2, comment n.1. Defendant contends on appeal that the district court erred both in its application of the categorical approach in determining the nature of his prior conviction and in its conclusion that the offense was one that qualified as a "crime of violence."

The categorical approach articulated in *Taylor v. United States*, 495 U.S. 575, 601 (1990), and extended to plea-based convictions in *Shepard v. United States*, 544 U.S. 13, 26 (2005), for determining whether a prior conviction constitutes a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2), has been applied by this court to the parallel determination of whether a prior conviction constitutes a "crime of violence" under USSG § 4B1.2(a). *See*, *e.g.*, *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995); *United States v. Foreman*, 436 F.3d 638, 641 (6th Cir. 2006). Under this categorical approach, the court must look only to the fact of conviction and the statutory definition—not the facts underlying the offense—to determine whether that definition supports a conclusion that the conviction was for a crime of violence. *United States v. Armstead*, 467 F.3d 943, 947 (6th Cir. 2006) (discussing *Taylor* and *Shepard*). "One of the policies animating the Court's adoption of this approach was to avoid 'the practical difficulties and potential unfairness' of permitting a sentencing court to relitigate the facts and delve into the details of a prior conviction." *Id*. (quoting *Taylor*, 495 U.S. at 601).

*Taylor* recognized a "narrow exception" when the statutory definition is ambiguous, under which the court may examine the charging papers or jury instructions to determine whether the convicting jury necessarily found all the requisite elements of an offense that would qualify as a "violent felony" under the ACCA. *Id*. at 947. In addressing plea-based convictions in *Shepard*, the Court limited examination under this exception to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. In doing so, the Court specifically rejected the government's call to permit consideration of police reports and criminal complaint applications to support a finding that the guilty plea could only have been based on facts that would qualify the conviction as a "violent felony." *Id*. at 21. With these principles in mind, we turn first to the statutory definition of CSC-2.

## A.    Categorical Approach

In Michigan, CSC-2 may be committed in one of several ways. As noted, however, defendant's conviction was specifically for violation of Mich. Comp. Laws Ann. § 750.520c(1)(c), which defines the offense as follows:

> (1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exist:
>
> . . . .
>
> (c) Sexual contact occurs under circumstances involving the commission of any other felony.

It is at least ambiguous whether the statutory definition of the offense—sexual contact with another person under circumstances involving the commission of any other felony—constitutes a "crime of violence." Looking beyond the statutory definition, the government relied solely on the amended information, which identified the "other felony" as solicitation of a minor for immoral purposes. Specifically, the amended information charged defendant with having "sexual contact with another

person, to-wit: Angela . . . during the commission of another felony, to-wit: solicit[ing] minor for immoral purposes." Michigan makes it a felony to accost, entice, or solicit "a child less than 16 years of age . . . with the intent to induce or force that child . . . to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency," or to encourage the child to engage in any of those acts. MICH. COMP. LAWS ANN. § 750.145a.

It is clear, as the government concedes, that defendant's prior conviction does not have as an element "the use, attempted use, or threatened use of physical force against the person of another." Nor is it one of the enumerated property offenses—burglary of a dwelling, arson, or extortion—or an offense that involves the use of explosives.[2] Rather, the government argues that the conviction qualifies as a crime of violence under the "otherwise" clause of § 4B1.2(a)(2) because the offense involved sexual contact with a minor. The reach of this clause has been the subject of some debate, including in cases where the prior offense involved sexual contact with a minor, with varying results. *Compare*, *e.g.*, *United States v. Campbell*, 256 F.3d 381, 395-97 (6th Cir. 2001); *United States v. Champion*, 248 F.3d 502, 506 (6th Cir. 2001); *United States v. Hargrove*, 416 F.3d 486, 494-99 (6th Cir. 2005); *United States v. Sawyers*, 409 F.3d 732, 740-42 (6th Cir. 2005).

Defendant's first claim of error is that the district court did not adhere to the categorical approach in concluding that the prior conviction was one that involved sexual contact with a minor. As defendant rightly points out, although CSC-2 may be committed by sexual contact with a minor less than 13 years of age, or with a minor 13 to 16 years of age if one of four variables are also present, his conviction for "other felony" CSC-2 did not require proof that the sexual contact was with a minor. *See* MICH. COMP. LAWS ANN. § 750.520c(1)(a), (b), and (c). That is, the sexual contact may be with any other person, irrespective of age or consent, as long as it occurred "under circumstances involving the commission of any other felony." *Id*. Nor did the "other felony," solicitation of a minor, require that the immoral purposes involve sexual contact.

Indeed, the government acknowledged at sentencing that neither the statutory definition nor the amended information specified that the sexual contact was with a minor. Instead, the government urged the district court to use "common sense" to infer that since the defendant had sexual contact with Angela "while" soliciting a minor, Angela must have been that minor and, therefore, the sexual contact must have been with a minor. Although this appears to have been the case *factually*, we agree with defendant that, *categorically speaking*, the conviction did not necessarily require proof of sexual contact with a minor.[3]

In fact, given the record before the district court, the inference urged by the government could only have been drawn by considering the underlying facts. Specifically, in assessing the defendant's criminal history, the Presentence Report revealed that the prior conviction arose out of a consensual sexual relationship between Angela, who was 15 years old, and the defendant, who was 19 and 20 years old. That relationship came to the attention of the authorities after Angela ran away and stayed with the defendant. Not only is this the sort of information that one might expect to find in a police report or application for criminal complaint, but the government also makes no attempt

---

[2] The conviction was also not one of the offenses enumerated in the commentary to USSG § 4B1.2, comment n.1 ("murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling").

[3] Without attempting to determine the precise nexus required between the sexual contact and the "other felony," we note that the Michigan courts have required a direct interrelationship between the sexual contact and the other felony but have not insisted that the sexual contact be "during" the felony, or that the sexual contact and the other felony involve a single victim. *People v. Waltonen*, 728 N.W.2d 881, 889 (Mich. Ct. App. 2006), *lv. denied*, 741 N.W.2d 343 (Mich. 2007); *People v. White*, 425 N.W.2d 193, 197 (Mich. Ct. App. 1988).

to argue that it was based on *Shepard*-eligible records. While these underlying facts reflect conduct known in common parlance as "statutory rape," that was not the offense to which defendant pleaded guilty.

Moreover, that these facts invaded the district court's analysis is demonstrated by its characterization of the conviction as: "Statutory rape of a minor which occurs during the commission of another offense, in this case solicitation for immoral purposes." A second reference to the conviction as sexual contact with a minor in the commission of another offense confirms that the district court did not adhere to the dictates of *Taylor* and *Shepard* in determining that the prior conviction in this case was an offense involving sexual contact with a minor. As the Court recently explained, the categorical approach requires that "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 128 S. Ct. 1581, 1584 (2008).[4]

## B.    "Otherwise" Clause

Where the conviction does not have as an element the use, attempted use, or threatened use of force, courts have struggled with the question of when sexual contact with a minor "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See Hargrove*, 416 F.3d at 495-99 (discussing cases); *Sawyers*, 409 F.3d at 740-42 (same). Arguing that the government reads this court's precedent too broadly, defendant's position is that a conviction involving consensual sexual contact with a minor presents the requisite "serious potential risk of physical injury" only when it also involves an aggravating factor, such as the minor is less than 13 or 14 years of age or is a minor related to the defendant by blood or affinity. In other words, even if it can be shown that defendant's prior conviction involved consensual sexual contact between a 15-year-old and a 19-year-old, the defendant contends that since no aggravating factor was present the conviction did not present the serious potential risk of physical injury required under the "otherwise" clause of USSG § 4B1.2(a)(2).

In *Campbell*, on which the government places particular reliance, this court held that a conviction for CSC-2 under Michigan law constituted a "crime of violence." The court's reasoning rested, however, on the fact that the conviction was for having sexual contact with a person who was between 13 and 16 years of age and was related by blood to the defendant. The court explained that, "[a]lthough the crime can occur through mere consented touching, . . . there is a real possibility that physical force may be used in making sexual contact, particularly when the victim is a minor between 13 and 16 and within the strictures of familiarity and proximity bred by kinship." 256 F.3d at 396.

In *Champion* we recognized a congressional finding that the use of children in the production of sexually explicit materials can result in physical or psychological harm. 248 F.3d at 506. We also observed that "the likelihood of physical injury increases as the child's age decreases." *Id*. This is because a "'younger child is likely to have poorer judgment, less knowledge about sex, and

---

[4]The government contends that any such error is harmless because it could have presented other judicial documents to establish that the prior conviction involved sexual contact with a minor; namely, the judgment of sentence and initial felony information reflecting a dismissed charge of CSC-3, specifically, sexual penetration with a person who is at least 13 and under 16 years of age. MICH. COMP. LAWS ANN. § 750.520d(1)(a). Those documents, however, were not before the district court or made part of the record on appeal. Moreover, the significance of those documents is not obvious because the court may only consider the elements of a dismissed charge that are essential to the offense to which the defendant pleaded guilty. *Armstead*, 467 F.3d at 949; *Arnold*, 58 F.3d at 1124. Nor can we conclude that the error was harmless simply because the defendant never denied that the prior conviction involved sexual contact with a minor. *See Shepard*, 544 U.S. at 28-29 (O'Connor, dissenting) (criticizing the majority for rejecting a "common sense" inference that the state burglary convictions involved entry into buildings).

less money, all of which deficits will make it less likely that she will use or insist that her partner use effective measures to prevent pregnancy and disease.'" *Id.* (quoting *United States v. Shannon*, 110 F.3d 382, 387 (7th Cir. 1997)); *see also United States v. Grundy*, 178 Fed. App'x 509, 513 (6th Cir. 2006) (holding that conviction for sexual abuse involving a child under the age of 12 was a crime of violence under USSG § 4B1.2(a)).

As the Supreme Court made clear in its recent decision in *Begay*, however, this court's determination that at least some convictions involving sexual contact with minors present "a serious potential risk of physical injury" is not sufficient to establish that the conviction comes within the scope of the "otherwise" clause. Addressing the scope of the "otherwise" or "residual" clause under the ACCA, the Court in *Begay* assumed that a conviction for driving under the influence of intoxicating liquor (DUI) involves conduct that "presents a serious potential risk of physical injury to another." 128 S. Ct. at 1584. Indeed, the Court agreed that drunk driving is an extremely dangerous crime. *Id.* Nonetheless, the Court held that a conviction for DUI falls outside the scope of the "otherwise" clause because it "is simply too unlike the provisions's listed examples for us to believe that Congress intended the provision to cover it." *Id.* The Court explained that the presence of the listed examples—burglary, arson, extortion, or crimes involving the use of explosives—"indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.' § 924(e)(2)(B)(ii)." *Id.* at 1585.

Next, referencing its earlier decision in *James*, which addressed whether attempted burglary presented comparable amount of risk as the enumerated crime of burglary, the Court in *Begay* concluded that similarity in the degree of risk was not a sufficient basis to conclude that a crime should come within the scope of the clause. *Id.*; *see James v. United States*, 127 S. Ct. 1586, 1594-97 (2007). Rather, the Court held that, in order to give effect to every part of the statutory definition, the examples should be read "as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Begay*, 128 S. Ct. at 1585.

Offering further insight, the Court in *Begay* explained that the crime of DUI differs from the examples "in at least one pertinent, and important, respect. The listed crimes all typically involve purposeful, 'violent' and 'aggressive' conduct. . . . And such crimes are 'characteristic of the armed career criminal, the eponym of the statute." *Id.* at 1586 (citations omitted). DUI statutes, by contrast, "typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." *Id.* at 1586-87. As a result, the Court held that New Mexico's crime of DUI fell outside the scope of the ACCA's "clause (ii)" definition of a "violent felony." *Id.* at 1588.

Adhering to our view that the parallel provisions in the definitions of a "violent felony" under the ACCA and a "crime of violence" under USSG § 4B1.2(a)(2) should be interpreted in a consistent manner, we conclude that § 4B1.2(a)(2) also should be limited to crimes that are similar in both kind and in degree of risk to the enumerated examples—burglary of a dwelling, arson, extortion, or crimes involving the use of explosives. While this interpretation narrows the scope of convictions that qualify as a "crime of violence" under § 4B1.2(a)(2), making it more difficult for the government to invoke the enhancement, it would be inappropriate for this court to speculate on the arguments that might be made in light of *Begay* if the government is able to establish, consistent with *Shepard*, that the conviction necessarily required proof of sexual contact with a minor that presents a "serious potential risk of physical injury to another."

Having concluded that the district court erred in the calculation of the guidelines, we **VACATE** the defendant's sentence and **REMAND** for further proceedings consistent with this opinion.