**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0625n.06
Filed: October 16, 2008

**No. 07-5640**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    **Plaintiff-Appellee,**

v.

WILFORD H. NIECE,

    **Defendant-Appellant.**

                                    /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

---

**BEFORE:**    **CLAY and COOK, Circuit Judges; and OLIVER, District Judge.**[*]

    **CLAY, Circuit Judge.** Defendant Wilford H. Niece appeals his conviction under 21 U.S.C. § 843(b) and § 846 for multiple cocaine-related offenses. He argues that his conviction was improper because newly discovered evidence that his wife, a key prosecution witness, was having an affair undermines her testimony, and because the district court should have declared a mistrial when a prosecution witness testified that Defendant had a prior conviction. Defendant also appeals his life sentence, and asserts that the district court improperly applied a career offender enhancement in calculating his Guidelines sentence. For the reasons that follow, we **AFFIRM** Defendant's conviction, but **REVERSE** and **REMAND** for re-sentencing.

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

## STATEMENT OF FACTS

Defendant Wilford Niece is incarcerated, and was incarcerated at all times relevant to this case. During his incarceration, Defendant befriended fellow inmate William David Jones. As the date of Jones' release approached, a third inmate, Felipe Rojas, approached Jones to discuss the possibility of Jones purchasing a large quantity of marijuana from one of Rojas' associates shortly after Jones' release from prison. Because Jones and Defendant had previously discussed selling drugs together, Jones told Defendant about his conversations with Rojas, and Defendant agreed to help Jones purchase the drugs. Defendant also suggested that, in addition to marijuana, they purchase and resell cocaine from Rojas' contact.

Under the plan that Jones and Defendant developed, Defendant agreed to provide Jones with $45,000, which Jones would use to purchase three kilograms of cocaine and 100 pounds of marijuana. Because Defendant did not have direct access to this amount of money while he was incarcerated, Defendant delegated responsibility to obtain the funds to his unincarcerated wife, Missy Niece. To coordinate the sale, Rojas gave Jones a phone number to call after Jones' release from prison. Rojas told Jones that the phone number belonged to his son, and instructed Jones to call his son to arrange the drug sale, and to make the actual purchase of the drugs with the money Missy provided.

To frustrate attempts by law enforcement to discover their conspiracy, Defendant and his wife developed a code to use when he called her from the prison phones to discuss the drug sale. Jones, Defendant, and Missy all agreed that Jones would be called "Uncle Darryl" during any conversations regarding the conspiracy. Defendant and Missy referred to potential customers for their soon-to-be-obtained cocaine as "Bill" and "Neil." They referred to the cocaine itself as "bricks."

-2-

Unbeknownst to Jones, Missy, and Defendant, however, Rojas was a federal informant, and the phone number Rojas gave Jones did not belong to his son. Rather, the number Jones ultimately called to arrange the drug sale belonged to Sami Ayyad, an officer with the Drug Enforcement Agency ("DEA"). Acting as Rojas' son, Ayyad instructed Jones to meet a drug dealer named "Wally" at a Marriott hotel in Lexington, Kentucky, where Wally would sell him three kilos of cocaine at $15,000 per kilo. Wally was not a drug dealer, but a DEA agent named Walter Martin.

On July 27, 2006, Jones met Martin in the lobby of the Marriott hotel and showed Martin a shaving kit bag stuffed with the $45,000 in cash that Missy had provided him. Martin told Jones to follow him to the parking lot, where the drug sale would take place. As Jones exited the Marriott, he was arrested, and he quickly agreed to assist the DEA's investigation. In cooperation with law enforcement, Jones called Missy, told her that he had successfully purchased the cocaine, and made arrangements to meet Missy at a McDonald's restaurant. Shortly thereafter, DEA agents found Missy at a gas station across the street from the McDonald's, and they arrested her. Because Defendant was incarcerated, it was not necessary to take him into custody.

Following their arrests, Jones and Missy pled guilty to various charges arising out of their participation in the drug conspiracy. Defendant, however, pled not guilty. In a trial commencing January 30, 2007, the prosecution presented considerable evidence against Defendant, including testimony by Missy and Jones laying out the details of their plans to acquire and sell cocaine, testimony by informant Rojas detailing his conversations with Jones and Defendant, taped phone conversations in which Defendant and Missy discussed the drug conspiracy, and post-arrest correspondence between Defendant and Missy in which Defendant advised Missy to plead guilty and lamented that "I real[l]y got us screwed up," and that "[w]e just about had it over with [and] I

-3-

screwed us up again." (J.A. 284.) On February 2, 2007, a jury convicted Defendant on multiple counts arising from his participation in the drug conspiracy.

On May 7, 2007, Defendant filed a motion for a new trial with the district court. He claimed that a letter, allegedly handwritten by Missy Niece, revealed that she was having an affair with a man named "Jamie," and that this affair gave her a motive to lie to the jury regarding Defendant's involvement in the drug conspiracy. After conducting a hearing on whether this newly discovered evidence warranted a new trial, the district court denied the motion.

On May 14, 2007, the district court sentenced Defendant to life in prison. During the sentencing hearing, the sentencing judge noted that Defendant had two prior convictions, one involving drugs, and the second involving the transportation of a minor across state lines for the purpose of engaging in illicit sexual activity. The district court concluded that Defendant's two prior convictions were sufficient to qualify Defendant as a career offender under the Sentencing Guidelines, justifying life imprisonment. *See United States v. Phinazee*, 515 F.3d 511, 515 (6th Cir. 2008) ("Congress has indicated that career offenders . . . should be sentenced at or near the maximum term of imprisonment . . . .").

Defendant now appeals his conviction and sentence, alleging that the district court's improper evidentiary ruling prejudiced his trial, that the district court should have granted his motion for a new trial, and that the district court erred in treating him as a career offender under the Sentencing Guidelines.

## DISCUSSION

### I.    Denial of Motion for New Trial

*Standard of Review*

A district court's disposition of a motion for a new trial on the basis of newly discovered evidence is reviewed for abuse of discretion. *United States v. Olender*, 338 F.3d 629, 635 (6th Cir. 2003).

*Analysis*

Courts generally disfavor motions for a new trial based on newly discovered evidence and, as a result, such motions should only be granted with caution. *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000). Nevertheless, Federal Rule of Criminal Procedure 33 empowers a district court to grant a new trial, upon a defendant's motion, when the defendant demonstrates that "(1) the evidence was discovered after trial, (2) it could not have been discovered earlier with due diligence, (3) it is material and not merely cumulative or impeaching, and (4) it would likely produce an acquittal if the case was retried." *Id.* at 586-87. Defendant, however, has not met his burden under Rule 33.

Assuming that the letter Missy allegedly wrote to her lover, Jamie, constitutes new evidence that could not have been discovered before trial,[1] the letter is not "material." Nothing in the letter suggests that Defendant is not guilty of participating in a drug conspiracy. Instead, the letter is "merely . . . impeaching." The letter contains only Missy's assertion that she will divorce Defendant, several statements that she would like to marry Jamie, a request that Jamie "give" her a baby, and multiple statements detailing how much she enjoys having sex with Jamie. (J.A. 76-78.) The letter shows only that Defendant's wife might want him to remain incarcerated.

---

[1]It is also unclear whether the letter is admissible. A document such as the letter at issue may be admitted into evidence upon a showing that the letter actually is what Defendant claims it is. Fed. R. Evid. 901(a). Defendant, however, has offered nothing to establish the authenticity of the letter, and the letter is not self-authenticating. *See* Fed. R. Evid. 902. In fact, the letter does not provide Missy's signature, as the author of the letter signed it simply, "Love, Me." (J.A. 78.)

Further, any impeachment value the letter might have is outweighed by the substantial evidence in the record corroborating Missy's testimony implicating Defendant in the drug conspiracy. At trial, Missy revealed what she knew of Jones' and Defendant's plans to acquire and sell cocaine. Most of her testimony, however, involved the prosecutor playing taped telephone conversations between her and Defendant, with the prosecutor pausing the tape occasionally to ask Missy to interpret particular code words. Although Missy's explanation of each code word likely helped the prosecution in making a coherent presentation to the jury, Missy was not the jury's only source of knowledge regarding the meaning of many key code words. Jones, for example, testified that his code name was "Uncle Darryl" during the drug conspiracy, and Agent Martin testified that the term "bricks" referred to cocaine. Further, both Jones and informant Rojas testified to most of the details Missy revealed in her testimony regarding the plans of Jones and Defendant to purchase and resell cocaine. Thus, even if the letter Missy allegedly wrote justified excising her testimony from the record, the prosecution's remaining evidence provided the jury with overwhelming evidence to support Defendant's conviction. Accordingly, the newly discovered evidence Defendant has offered would not "likely produce an acquittal if the case was retried." *Turns*, 198 F.3d at 587. As a result, we conclude that the district court did not abuse its discretion in denying Defendant's motion for a new trial.

## II.    Evidentiary Ruling

### *Standard of Review*

After prosecution witness Felipe Rojas mentioned in his testimony that Defendant had an additional conviction besides the one which resulted in his present incarceration, Defendant moved for a mistrial, and the district court denied the motion. "This Court reviews the denial of a motion

for [a] mistrial for an abuse of discretion." *United States v. Layne*, 192 F.3d 556, 573 (6th Cir. 1999).

### *Analysis*

Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," although such evidence might be relevant and admissible for other purposes, such as to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Even if evidence of a past crime is revealed to the jury in violation of Rule 404(b), "the Federal Rules of Criminal Procedure provide that an error 'which does not affect substantial rights shall be disregarded.'" *Layne*, 192 F.3d at 573 (quoting Fed. R. Crim. P. 52). "When the government presents other convincing or overwhelming evidence, we may deem the admission of 404(b) evidence mere harmless error." *Id.*

Defendant planned the crimes which serve as the basis for his current conviction while serving a sentence that arose out of a similar drug-related conviction in 2000. Prior to his 2000 conviction, Defendant served seventy-two months based on a 1992 conviction for transportation of a minor with the intent to engage in criminal sexual activity. At Defendant's most recent trial, Rojas mentioned that Defendant had "been in the penitentiary about—he said about ten years before, somewhere." (J.A. 116.) Thus, Rojas revealed to the jury that Defendant had a prior conviction, even though such evidence should not have been placed before the jury under Rule 404(b).

Despite the potential for prejudice inherent in revealing a criminal defendant's irrelevant prior convictions to the jury, we believe that Rojas' isolated statement constitutes harmless error. Over the course of Defendant's trial, the prosecution presented testimony by Jones and Missy, two

of Defendant's co-conspirators, who testified in great detail regarding their plans for buying and reselling cocaine. Rojas, in discussing his efforts to learn information regarding their plans and then pass this information on to Officer Ayyad, corroborated the testimony of Jones and Missy. Moreover, the record contains transcripts of Defendant's telephone conversations with his wife in which they discuss the cocaine conspiracy, as well as post-arrest letters from Defendant to Missy in which he confesses that "I real[l]y got us screwed up," and that "[w]e just about had it over with [and] I screwed us up again." (J.A. 284.) Faced with this overwhelming evidence of Defendant's guilt, it is doubtful that Rojas' brief mention of Defendant's prior conviction played a role in the jury's decision to convict Defendant. Accordingly, we conclude that Rojas' testimony constituted harmless error, and that Defendant's conviction should be affirmed.

**III.     Career Offender Enhancement**

***Standard of Review***

Questions involving the interpretation of the Federal Sentencing Guidelines are legal questions which we review *de novo*. *United States v. Hall*, 531 F.3d 414, 416 (6th Cir. 2008).

***Analysis***

Defendant argues that the district court incorrectly calculated his Guidelines sentence by applying a career offender enhancement. A defendant qualifies as a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.1. Because it is uncontested that his current offense is a controlled substance offense, and that one of his two prior convictions was a controlled

substance offense, whether his conviction for transporting a minor across state lines with the intent to engage in illicit sexual activity constitutes a crime of violence will determine whether Defendant qualifies as a career offender.

The term "crime of violence" for purposes of § 4B1.1

> means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

*Id.* § 4B1.2(a) (formatting altered). In determining whether a prior conviction constitutes a "crime of violence" under § 4B1.2(a), this Court has applied the categorical approach articulated in *Taylor v. United States*, 495 U.S. 575, 601 (1990). *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008) (noting that, although *Taylor* addressed whether a prior conviction constitutes a "violent felony" under the Armed Career Criminal Act, this Court has applied *Taylor*'s categorical approach to determine "whether a prior conviction constitutes a 'crime of violence' under USSG § 4B1.2(a)"). Under the categorical approach, this Court looks "only to the fact of conviction and the statutory definition—not the facts underlying the offense—to determine whether that definition supports a conclusion that the conviction was for a crime of violence." *Id.*; *United States v. Champion*, 248 F.3d 502, 505 (6th Cir. 2001). If, however, the conviction does not have as an element the use, attempted use, or threatened use of force, a court must evaluate whether the crime falls within the "otherwise" clause—whether the crime "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Champion*, 248 F.3d at 505; USSG § 4B1.2(a).

Defendant previously was convicted under 18 U.S.C. § 2423.[2] Section 2423(a) prohibits "knowingly transport[ing] an individual who has not attained the age of 18 years in interstate or foreign commerce, . . . with intent that the individual engage in . . . any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2423(a). The statute does not have as an element the use, attempted use, or threatened use of force. Although the use of force is "one conceivable means of accomplishing the offense," that is insufficient to establish that force is an element of the offense. *Champion*, 248 F.3d at 505. In addition to lacking the use of force as an element of the offense, 18 U.S.C. § 2423 also is not one of the enumerated offenses specifically defined as a crime of violence in USSG § 4B1.2, or one of the offenses listed in the commentary. USSG § 4B1.2, cmt. n.1. Thus, whether Defendant's prior conviction constitutes a crime of violence depends on whether it "otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2).[3]

---

[2]It is somewhat unclear under which subsection of § 2423 Defendant was convicted. Petitioner suggests he was convicted under subsection (b). Pet'r Br. 35. The conduct described in subsection (a), however, most closely matches that described in the statutory language previously invoked by this Court in affirming Defendant's 1993 conviction. *United States v. Niece*, No. 93-5011, 1993 WL 424960, at *1 n.1 (6th Cir. Oct. 19, 1993). In any event, the analysis would be the same under both subsections.

[3]Following the Supreme Court's decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), the scope of the "otherwise" clause might be limited. In *Begay*, the Supreme Court considered whether a felony conviction for a DUI came within the scope of the "otherwise" clause in the definition of a "violent felony" under the Armed Career Criminal Act. 128 S. Ct. at 1583. The Court concluded it did not because a DUI was "simply too unlike the provision's listed examples." *Id.* at 1584. Following the Supreme Court's decision, this Court concluded that the same limitation the Supreme Court imposed with respect to the ACCA's "otherwise" clause should also apply to the definition of "crime of violence" in USSG § 4B1.2. *United States v. Bartee*, 529 F.3d 357, 363 (6th Cir. 2008). In addition, *Bartee* noted that prior determinations of this Court "that at least some convictions involving sexual contact with minors present 'a serious potential risk of physical injury' is not sufficient to establish that the conviction comes within the scope of the 'otherwise' clause." *Id.* at 362. *Bartee*, however, did not determine whether the prior conviction at issue, criminal sexual conduct in the second degree, constituted a "crime of violence."

In sentencing proceedings, a district court "must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review." *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005). In considering the application of the Sentencing Guidelines, the district judge in this case concluded that "the Chapter 4 enhancements . . . show that [D]efendant has a prior felony controlled substance conviction . . . as well as a felony crime of violence . . . involving the minor that [was] just discussed." (J.A. 234.) The crime "just discussed" was "a crime involving intercourse or other sexual contact with an underage child." (J.A. 231.) In the exchange with Defendant's counsel, the district judge referred to similar cases involving a "juvenile" and "minors" which found that "sexual offenses involving minors" create "a serious potential risk of injury to the minors under Section 4B1.2," and, as a result, are crimes of violence. (J.A. 231-33.)

Although the district judge discussed several of the factors under 18 U.S.C. § 3553(a), we conclude that the sentencing record does not allow for meaningful appellate review. *See United States v. Dexta*, 470 F.3d 612, 614-15 (6th Cir. 2006). In determining whether a crime involving sexual contact with a minor constitutes a "crime of violence," prior decisions of this Court have focused on "aggravating factors," such as incest or a very young victim. In *United States v. Campbell*, the court concluded that second-degree criminal sexual conduct with a thirteen to sixteen year-old family member constituted a crime of violence. 256 F.3d 381, 396-97 (6th Cir. 2001). In addition, this Court has recognized that "the likelihood of physical injury increases as the child's age decreases" because a "younger child is likely to have poorer judgment, less knowledge about sex, and less money, all of which deficits will make it less likely that she will use or insist that her partner use effective measures to prevent pregnancy and disease." *Champion*, 248 F.3d at 506 (quoting *United States v. Shannon*, 110 F.3d 382, 387 (7th Cir. 1997)); *see also Shannon*, 110 F.3d at 386-87

-11-

(concluding, after an extensive discussion, that statutory rape of a thirteen year old girl, absent any threat of violence or incest, constituted a crime of violence due to her lack of knowledge of disease risks, pregnancy, and motherhood).

Thus, in order to determine whether the district court was correct to classify a sex offense with a minor as a "crime of violence," thus triggering the career offender enhancement,[4] the age of the minor involved is critical. Neither the sentencing transcript nor the pre-sentence report, however, includes the age of the victim in the prior crime, noting only that the crime involved a "minor," an "individual under 18 years of age." (J.A. 306.) As a result, the record does not allow for "reasonable appellate review" as to whether the district judge arrived at his sentencing determination in a procedurally reasonable way, and we must remand to the district court for re-sentencing. On remand, the district court should make the appropriate findings regarding the victim's age in determining whether Defendant should be sentenced as a career offender under the Sentencing Guidelines.

## CONCLUSION

For the reasons stated above, we **AFFIRM** Defendant's conviction, and **REVERSE** and **REMAND** for re-sentencing consistent with this opinion.

---

[4]We also note that the district judge failed to specifically state that he was applying a career offender enhancement; the judge instead referred only to "Chapter 4." In addition, though it can be inferred from the conversation with counsel to which the judge referred, the district judge failed to state exactly which prior conviction he believed to be the "felony crime of violence" justifying enhancement under Chapter 4. (J.A. 234.)