*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0097p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

　　　　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

MYRON BAKER,

　　　　　　　　　　*Defendant-Appellant.*

No. 07-5412

>

———————————

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 06-00069—Curtis L. Collier, Chief District Judge.

Submitted: March 3, 2009

Decided and Filed: March 16, 2009

Before: KEITH, COLE, and McKEAGUE, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Charles Patrick Dupree, LAW OFFICE, Chattanooga, Tennessee, for Appellant. Scott A. Winne, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge. Defendant Myron Baker appeals the 300-month sentence he received following his guilty plea for conspiracy to distribute cocaine hydrochloride. For the reasons stated below, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** to the district court for the limited purpose of resentencing defendant after determining whether he qualifies as a career offender under the Sentencing Guidelines.

1

# I

This case arose out of a joint investigation by local and federal law enforcement agents into a drug trafficking organization coordinated by defendant and Rodney Bates in Chattanooga, Tennessee. Through confidential sources and authorized wiretaps, agents learned that defendant acted as the primary supplier for the organization, obtaining cocaine hydrochloride from Atlanta, Georgia.

On June 13, 2006, a federal grand jury in the Eastern District of Tennessee returned a fourteen-count indictment against defendant and eleven other individuals, including Rodney Bates and defendant's half brother, Jermaine Baker.[1] The first count charged all twelve defendants with conspiracy to distribute five kilograms or more of cocaine hydrochloride, fifty grams or more of crack cocaine, and 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and 846. Counts ten and eleven charged defendant individually with possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On September 11, 2006, defendant appeared before the district court with counsel and entered a guilty plea pursuant to a plea agreement. Defendant pleaded guilty to conspiracy to distribute a mixture or substance containing five kilograms or more of cocaine hydrochloride, as charged in count one.

Defendant appeared before the district court for sentencing on March 29, 2007. He objected to the Presentence Investigation Report's ("PSR") recommendation of a four-level enhancement for his leadership role in the offense and a two-level enhancement for possession of a firearm in the course of a drug trafficking offense. He also challenged the PSR's conclusion that he qualified as a career offender. The district court granted defendant's objection regarding the firearm enhancement, but denied his other two objections. After applying a full three-level reduction for acceptance of responsibility under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 3E1.1, the

---

[1] Defendant's appeal in this case has been consolidated with the appeals of two of his co-defendants: Jermaine Baker, No. 06-6610, and Roderick Bates, No. 07-5033.

district court determined that the total offense level was 34 and the criminal history category was VI, which yielded a Guidelines range of 262 to 327 months. Acknowledging the advisory nature of the Guidelines, the district court then sentenced defendant to a term of 300 months' imprisonment.  Defendant timely appealed his sentence.[2]

**II**

Following *United States v. Booker*, 543 U.S. 220 (2005), we review a district court's sentencing decisions "under a deferential abuse-of-discretion standard," for reasonableness.  *Gall v. United States*, 128 S. Ct. 586, 591 (2007); *United States v. Stephens*, 549 F.3d 459, 464 (6th Cir. 2008).  This inquiry consists of both a procedural and a substantive component.  *Gall*, 128 S. Ct. at 597.

First, we must "ensure that the district court committed no significant procedural error."  *Id.*  A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence.  *Id.*  We review the district court's application of the Sentencing Guidelines *de novo* and the district court's findings of fact at sentencing for clear error.  *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007).

If the sentence is procedurally sound, we then must consider "the substantive reasonableness of the sentence imposed."  *Gall*, 128 S. Ct. at 597.  A sentence is substantively unreasonable if the district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor."  *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).  Sentences imposed within a properly-calculated

---

[2]Although defendant filed his notice of appeal after he was sentenced, but before the district court entered judgment, we still possess appellate jurisdiction. *See* FED. R. APP. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry."); *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418 n.3 (6th Cir. 1997) ("As long as a subsequent final order is eventually entered, a prematurely filed notice of appeal can confer appellate jurisdiction.").

Guidelines range enjoy a rebuttable presumption of substantive reasonableness on appeal. *United States v. Vonner*, 516 F.3d 382, 389-90 (6th Cir. 2008) (en banc); *see also Rita v. United States*, 127 S. Ct. 2456, 2462-63 (2007) (holding that "a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines").

### III

On appeal, defendant makes several challenges to the district court's Guidelines calculations. "When considering the Guidelines, the district court must calculate the correct sentencing range. In practice, this means that the court must begin at the proper base-offense level, apply any applicable enhancements or reductions to arrive at the adjusted-offense level, and use the resulting offense level with the appropriate criminal-history category to arrive at a sentencing range." *United States v. Thompson*, 515 F.3d 556, 561 (6th Cir. 2008) (citation omitted). Here, defendant alleges that the district court erred by applying an offense level enhancement for his leadership role in the offense, applying a criminal history score enhancement for committing the offense while on probation, and classifying him as a career offender.

**A. Enhancement for Leadership Role in the Offense**

Defendant argues that he improperly received an offense level enhancement for his leadership role in the offense. The Guidelines provide for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).

First, defendant appears to argue that the district court used an overly broad definition of "participants" in finding that the criminal activity involved at least five participants. A "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 cmt. n.1. Here, it is undisputed that the indictment charged at least twelve individuals for their involvement in this drug conspiracy, and the record indicates that at least six of those co-defendants—not including defendant himself—pleaded guilty to the charges.

Moreover, defense counsel admitted at the sentencing hearing that "I believe in this case there were definitely more than four people involved in the total conspiracy." Sentencing Tr. at 3, J.A. at 178. Thus, it is clear that the offense involved five or more "participants."

Second, defendant argues that there was no evidence that he directly supervised five or more participants. But "a defendant whose sentence is enhanced under § 3B1.1(a) need only supervise or manage *one* of the five or more other participants." *United States v. Robinson*, 503 F.3d 522, 529 (6th Cir. 2007) (emphasis added); *see also* U.S.S.G. § 3B1.1(a) cmt. n.2 (providing that, "[t]o qualify for an adjustment under this section, the defendant must have been the organizer [or] leader . . . of one or more other participants"). Here, the PSR indicated that defendant acted as the supplier for the drug trafficking organization. It also detailed conversations between defendant and other individuals, which indicated that defendant and Rodney Bates were the organizers and leaders of the organization. Because defendant did not object to the PSR's factual allegations, the district court was allowed to accept them as true. *See United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004) ("'The district court is allowed to accept as true all factual allegations in a presentence report to which the defendant does not object.'" (quoting *United States v. Levy*, 250 F.3d 1015, 1018 (6th Cir. 2001)). Based upon the evidence before it, the district court did not clearly err in finding that defendant was the organizer or leader of at least one participant in the offense.

Despite defendant's unsupported assertions on appeal, the district court properly concluded that defendant "was an organizer or leader of a criminal activity that involved five or more participants," and therefore did not err in applying the four-level enhancement under § 3B1.1(a).

## B.  Enhancement for Commission of Offense While on Probation

Defendant next argues that the district court improperly added two points to his criminal history score for committing the offense while on probation. The Guidelines provide for a two-point enhancement in a defendant's criminal history score "if the

defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d).

We find no error by the district court in determining that defendant committed the instant offense while on probation. The PSR indicated that defendant was on probation for DUI and possession of marijuana at the time he committed the offense for which he pleaded guilty. Defendant did not object to this factual finding at his sentencing hearing, so the district court properly accepted it as true. *See Carter*, 355 F.3d at 925. Further, defendant admitted in his plea agreement "that within the time frame alleged in Count One of the Indictment"—that is, January 2002 through June 2006—"he conspired with others . . . to distribute more than five kilograms of cocaine hydrochloride." The PSR shows that defendant was convicted and sentenced to probation twice within this time frame:  on January 29, 2002, and January 24, 2006. Accordingly, the district court did not err in applying the enhancement to defendant's criminal history score under § 4A1.1(d).

## C.  Enhancement for Career Offender Status

Finally, defendant argues that he should not have received an offense level enhancement for his status as a career offender under U.S.S.G. § 4B1.1(a). If the district court had not applied this enhancement, the total offense level would have been 33 rather than 34.[3] Based upon this reduced offense level, the advisory Guidelines range would have been 235 to 293 months rather than 262 to 327 months.[4]

Section 4B1.1(a) provides the following:

---

[3]Although the original PSR calculated an adjusted offense level of 40, the government was willing to agree at the sentencing hearing that defendant "actually [has] got an adjusted offense level of 38 in the new addendum" to the PSR. After the district court granted defendant's objection to the two-level firearm enhancement and applied the three-level reduction for acceptance of responsibility, then, the total offense level would have been 33.

[4]Both of these calculations are based upon a criminal history category of VI, because defendant would have fallen into that category regardless of whether he qualified as a career offender.

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;  (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense;  and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Defendant does not argue that he did not satisfy the first two requirements for career offender status;  rather, he argues that he did not possess the requisite predicate felony convictions.  The district court found that defendant qualified as a career offender based upon his two state felony convictions for aggravated assault and his state felony conviction for reckless endangerment.  "We review *de novo* a district court's conclusion that a crime qualifies as a predicate offense for the career-offender designation." *United States v. Skipper*, 552 F.3d 489, 491 (6th Cir. 2009).

First, defendant claims that his two aggravated assault convictions arose out of the same incident and therefore should have been considered a single offense.  The provisions of U.S.S.G. § 4A1.2 are applicable to the counting of convictions under the career offender provisions of the Guidelines.  U.S.S.G. § 4B1.2 cmt. n.3.  At the time of defendant's sentencing hearing in 2006, § 4A1.2 provided that "[p]rior sentences imposed in unrelated cases are to be counted separately.  Prior sentences imposed in related cases are to be treated as one sentence."[5]  Application Note 3 explained the method for determining whether cases were "related":

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).  Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2 cmt. n.3.  Here, the record does not clearly indicate whether defendant's two aggravated assault convictions constituted separate convictions for

---

[5]In 2007, § 4A1.2 was amended and now provides the following:  "Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).  If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument;  or (B) the sentences were imposed on the same day."

career offender purposes. According to the PSR, both of these convictions were based upon conduct that occurred on the same day—July 9, 1991. There is no indication of any intervening arrest; in fact, the convictions appear to have stemmed from the same incident in which defendant and another individual caused bodily injury to two other individuals.[6] Defendant was also sentenced for both offenses on the same day. Finally, it appears from the transcript of the sentencing hearing that both the government and the district court assumed that these offenses only constituted a single conviction.

In fact, the government maintained at the sentencing hearing, and the district court seemed to agree, that defendant's Tennessee conviction for reckless endangerment qualified as the second predicate felony conviction for purposes of career offender status.[7] Defendant challenges this finding on appeal, contending that reckless endangerment does not constitute a "crime of violence" under Tennessee law. Under the Guidelines, a "crime of violence" is defined as follows:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Under the "categorical approach" for determining whether a prior conviction constitutes a crime of violence under § 4B1.2(a), we must look "only to the fact of conviction and the statutory definition—not the facts of the underlying

---

[6] According to the PSR, the indictment in defendant's first aggravated assault conviction "charged that, on July 9, 1991, Myron Orlando Baker and Derrick Richardson unlawfully caused bodily injury to Garry Brown, by use of a deadly weapon." The indictment in the second aggravated assault conviction apparently "charged that, on July 9, 1991, Myron Orlando Baker and Derrick Richardson intentionally, knowingly or recklessly caused bodily injury to Edwin Crayton, by use of a deadly weapon."

[7] The district court's conclusion as to which of defendant's offenses qualified as predicate felonies for career offender purposes is somewhat unclear. The U.S. Attorney argued that even if defendant's two aggravated assault convictions were considered a single offense, the reckless endangerment conviction was sufficient to place defendant in the career offender category. The district court then stated: "And as [the U.S. Attorney] indicated, the predicate offenses for the career offender were separate." Sentencing Tr. at 11, J.A. at 185.

offense—to determine whether that definition supports a conclusion that the conviction was for a crime of violence."**8**  *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008); *see also James v. United States*, 550 U.S. 192, 201-02 (2007).  In a case where the statutory definition is ambiguous and where a defendant has pleaded guilty, we may also consider the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005); *see also Skipper*, 552 F.3d at 492; *Bartee*, 529 F.3d at 359.

Under Tennessee law, reckless endangerment is committed by one "who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury."  TENN. CODE ANN. § 39-13-103(a).  The offense becomes a felony when "committed with a deadly weapon," TENN. CODE ANN. § 39-13-103(b), which includes a motor vehicle, *State v. Wilson*, 211 S.W.3d 714, 719 (Tenn. 2007).  This offense does not fall within the language of § 4B1.2(a)(1) because it does not involve the "use, or threatened use of physical force against the person of another," and it clearly does not involve "burglary of a dwelling, arson, or extortion, [or] use of explosives" under § 4B1.2(a)(2).  Accordingly, the offense can only be considered a "crime of violence" if we conclude that it "otherwise involves conduct that presents a serious potential risk of physical injury to another" under § 4B1.2(a)(2).

This court has previously held that a Tennessee conviction for felony reckless endangerment constitutes a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA") because "no scenario exists in which an individual could commit felony reckless endangerment without creating a serious risk of harm to others." *United States v. Bailey*, 264 F. App'x 480, 482 (6th Cir. 2008).  More recently, however, this court remanded a case to the district court for resentencing where the district court had

---

**8**This categorical approach was initially articulated in the context of whether a prior conviction constitutes a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2). *See Taylor v. United States*, 495 U.S. 575, 602 (1990).  However, the approach has been subsequently "applied by this court to the parallel determination of whether a prior conviction constitutes a 'crime of violence' under U.S.S.G. § 4B1.2(a)." *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008) (citing *United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995), and *United States v. Foreman*, 436 F.3d 638, 641 (6th Cir. 2006)).

determined that felony reckless endangerment in Tennessee constituted a "crime of violence" under § 4B1.2(a). *United States v. Johnson*, No. 06-6545, 2009 WL 224036, at \*7 (6th Cir. Jan. 30, 2009).

The *Johnson* court reasoned that the Supreme Court's recent decision in *Begay v. United States*, 128 S. Ct. 1581 (2008), "makes clear that the presence of a serious potential risk of physical injury alone is not sufficient to establish that the conviction is a 'crime of violence' under the 'otherwise' clause of USSG § 4B1.2(a)(2)." *Johnson*, 2009 WL 224036, at \*7. Indeed, the Supreme Court in *Begay* stated that the ACCA's "listed examples—burglary, arson, extortion, or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Begay*, 128 S. Ct. at 1584-85 (quoting 18 U.S.C. § 924(e)(2)(B)(iii)). Thus, the Court concluded that the clause only covers crimes that "are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 1587. Because the crime of driving under the influence did not involve the kind of "purposeful, violent, and aggressive" conduct as the listed examples, the Court held that it fell outside the scope of the ACCA's "violent felony" definition. *Id.* at 1586, 1588. Even more recently, in *Chambers v. United States*, the Court held that the Illinois offense of failure to report to a penal institution did not constitute a "violent felony," noting that the elements of the crime were a "far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." 129 S. Ct. 687, 692 (2009) (citing *Begay*, 127 S. Ct. at 1586) (internal quotation marks omitted). After *Begay*, this court has held that the career offender provision of the Guidelines "also should be limited to crimes that are similar in both kind and in degree of risk to the enumerated examples—burglary of a dwelling, arson, extortion, or crimes involving the use of explosives." *Bartee*, 529 F.3d at 363.

We agree with this court's decision in *Johnson* and conclude that, insofar as the district court determined that defendant's Tennessee reckless endangerment conviction qualified as a "crime of violence" under the Guidelines, there was insufficient evidence for it to do so. Although it is hardly debatable that the elements of felony reckless endangerment in Tennessee "present[ ] a serious potential risk of physical injury to another," § 4B1.2(a)(2), the offense does not clearly involve the type of "purposeful, violent, and aggressive" conduct as burglary, arson, extortion, or the use of explosives, *Begay*,128 S. Ct. at 1586.[9] Rather, on its face the statute criminalizes only reckless conduct. *See* TENN. CODE ANN. § 39-13-103(a); *see also United States v. Gray*, 535 F.3d 128, 132 (2d Cir. 2008) (holding that a similar reckless endangerment statute under New York law is not a "crime of violence" because it "does not criminalize purposeful or deliberate conduct").

Accordingly, we reverse and vacate defendant's sentence and remand to the district court for resentencing on the limited issue of whether defendant was entitled to a career offender enhancement in light of *Begay*. We do so despite the fact that the Supreme Court decided *Begay* after defendant was sentenced, and despite the fact that defendant did not object to consideration of the offense as a predicate felony before the district court. Because defendant did not object, our review is limited to determining whether the district court committed plain error. *Skipper*, 552 F.3d at 491; *see also United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005) (noting that plain error review applied where the defendant did not challenge his sentence before the district court, but where *Booker* subsequently made the Guidelines advisory); *United States v. Heikes*, 525 F.3d 662, 664 (8th Cir. 2008) ("When the Supreme Court changes the law while a defendant's case is pending on appeal, the plain error principle applies."); *United States v. Spells*, 537 F.3d 743, 748 (7th Cir. 2008) (noting that plain error review applies where "the Supreme Court issues an applicable decision post-sentencing, but during a pending appeal"). To establish plain error, a defendant must show the following:

---

[9]Although defendant does not explicitly cite to *Begay* in his appeal brief, his argument tracks the reasoning of *Begay*: he argues that reckless endangerment "does not on its face qualify as a crime of violence."

(1) that an error occurred in the district court;  (2) that the error was plain, i.e., obvious or clear;  (3) that the error affected defendant's substantial rights;  and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings.

*United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

In this case, the plain error standard has been satisfied.  Because defendant's reckless endangerment conviction does not on its face constitute a "crime of violence" under *Begay*, there was error under the current law.  *See United States v. Rogers*, 118 F.3d 466, 471 (6th Cir. 1997) ("To review for plain error, first we must determine whether there was error under *current law*." (emphasis added)).  This error is "plain"—that is, "clear" or "obvious"—because *Begay* clearly altered the requirements for an offense to qualify as a predicate felony under the "otherwise" clause of § 4B1.2(a).  *See Johnson v. United States*, 520 U.S. 461, 467 (1997) (holding that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal . . . it is enough that an error be 'plain' at the time of appellate consideration").  Indeed, prior to *Begay*, it was sufficient if the "conduct encompassed by the elements of the offense, in the ordinary case, present[ed] a serious potential risk of injury to another." *James*, 550 U.S. at 208; *see also Bailey*, 264 F. App'x at 482.  There was no requirement that the offense be "similar, in kind as well as in degree of risk posed," to the listed examples in § 4B1.2(a)(2).  *Begay*, 128 S. Ct. at 1587; *Bartee*, 529 F.3d at 363.

This error affected defendant's substantial rights by potentially increasing the advisory Guidelines range from 235 to 293 months to a range of 262 to 327 months.  *See Barnett*, 398 F.3d at 529 (holding that the possibility of receiving a lower sentence after *Booker* affected a defendant's substantial rights); *United States v. Oliver*, 397 F.3d 369, 380 (6th Cir. 2005) (holding that a more severe sentence affected the defendant's substantial rights); *cf. United States v. Bostic*, 371 F.3d 865, 877 (6th Cir. 2004) (holding that the district court's sentencing error "affected the government's and the United States citizens' substantial rights because it drastically reduced [the defendant's] sentence").  It is apparent from the record that there was a reasonable probability defendant would have received a more favorable sentence had the district court properly calculated the

Guidelines range.  The district court noted that "a sentence within the guideline" range was appropriate, Sentencing Tr. at 16, J.A. at 190, and sentenced defendant near the middle of the potentially improperly-calculated Guidelines range.  If, on remand, the district court concludes that defendant does not qualify as a career offender, defendant could receive a sentence at least seven months shorter than his original sentence. Further, the PSR does not clearly indicate any alternative qualifying predicate offenses—although defendant has a rich criminal history, each of his other offenses appears to be a misdemeanor or also does not appear to qualify as a "crime of violence." Finally, as to the fourth prong of the plain error standard of review, such an error in the calculation of the sentencing range seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *See United States v. Story*, 503 F.3d 436, 440 (6th Cir. 2007); *Oliver*, 397 F.3d at 380; *United States v. Goward*, No. 06-2586, 2009 WL 512685, at *6 (6th Cir. Mar. 2, 2009).

Moreover, we note that at least one of our sister circuits has already reached the same conclusion as we do today.  *See United States v. Davidson*, 551 F.3d 807, 808 (8th Cir. 2008) (holding that "[u]nder current law, it was plain error for the district court to conclude that Davidson's commission of tampering by operation was a crime of violence"); *United States v. Heikes*, 525 F.3d 662, 664 (8th Cir. 2008) (holding that *Begay* entitled the defendant to plain error relief "because his three DWI convictions do not qualify as violent felonies" under the ACCA).

The government argues that if defendant had objected to the conclusion that reckless endangerment constituted a predicate felony, it could have presented additional evidence establishing that the conviction did qualify as a "crime of violence."  The district court may consider any of this additional factual evidence on remand, provided, of course, that it is limited to the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."[10]  *Shepard*, 544 U.S. at 16.  The government may also offer

_____

[10]Even though at the original sentencing hearing "[t]he government had the burdens of production and persuasion" to prove that defendant's reckless endangerment conviction qualified as a predicate felony under § 4B1.1(a), its failure to do so was justified by "special circumstances"—the fact that *Begay* had not

evidence of any other separate predicate felonies, provided they were "felony convictions of either a crime of violence or a controlled substance offense" and were sustained prior to defendant's commission of the "instant offense of conviction."[11] U.S.S.G. § 4B1.2(c).

Because we remand to the district court for resentencing, we need not address defendant's other, more general objections to the procedural and substantive reasonableness of his sentence. Moreover, we express no opinion as to the length of defendant's sentence on remand; of course, any sentence imposed by the district court—including any variance from the properly-calculated advisory Guidelines range—will be reviewed under the same deferential reasonableness standard with which we review all sentences. *See Gall*, 128 S. Ct. at 591.

### IV

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part defendant's sentence. We **REMAND** to the district court for the limited purpose of resentencing defendant after determining whether defendant qualifies as a career offender under the Guidelines, U.S.S.G. § 4B1.1, in light of the Supreme Court's recent decision in *Begay* and consistent with this opinion.

---

yet been decided at the time the sentencing hearing took place. *United States v. Goodman*, 519 F.3d 310, 323 (6th Cir. 2008) (quoting *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995)). Accordingly, the government should be permitted to present further evidence on this issue on remand.

At the same time, the government also failed to offer factual evidence on the issue of whether defendant was responsible for more than five kilograms of cocaine—which would have raised the total offense level absent the career offender enhancement from a 33 to a 35. Because the government had an incentive to present this evidence at the original sentencing hearing (the career offender enhancement only yielded a total offense level of 34), and because its failure to do so was not otherwise justified by "special circumstances," we see no reason why it should be permitted to have a "second bite at the apple" on this issue on remand. *Id.*

[11]For example, the government could offer evidence demonstrating that defendant's two aggravated assault convictions are in fact separate convictions under U.S.S.G. § 4A1.2.