NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0401n.06

No. 08-5943

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 08, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARK A. GILLIAM,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

Before: BOGGS, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge.  Mark Gilliam appeals his convictions and sentence after pleading guilty to robbery and brandishing a firearm during a crime of violence.  We affirm his conviction, but remand for resentencing.

I.

With his criminal trial already underway, Gilliam agreed to change his plea in exchange for the Government's dropping certain charges.  Gilliam eventually pleaded guilty to robbery under 18 U.S.C. § 1951 and brandishing a firearm under § 924(c)(1)(A)(ii).  The court extensively questioned him before accepting the plea; Gilliam testified that no one pressured him to plead guilty and that his lawyer's representation satisfied him.  Ten weeks later, Gilliam moved pro se to withdraw his plea, claiming that counsel's ineffectiveness at trial intimidated him into pleading guilty.  He

simultaneously sought appointment of substitute counsel. The district court denied both requests after holding an evidentiary hearing, at which Gilliam was represented by the same appointed counsel about whom he had complained.

At the later sentencing hearing, the Government presented evidence of Gilliam's threats to witnesses and extensive criminal history, including his nickname, "Kill'em Gilliam." Over counsel's objection, the court applied a career-offender enhancement to the Guidelines range for the robbery charge and sentenced Gilliam to 240 months' imprisonment for robbery, with a consecutive 240 months for brandishing. On appeal, Gilliam challenges the denial of his motion for substitute counsel and the application of the career-offender enhancement.

## II.

### A.

Gilliam first argues that, because the district court required him to proceed at both the plea-withdrawal evidentiary hearing and sentencing while still counseled by the lawyer with whom Gilliam was dissatisfied, he was denied his Sixth Amendment rights. He seems to argue that, once he complained about counsel's performance, no constitutionally sufficient representation by that lawyer could follow.

"Once a defendant expresses his dissatisfaction with counsel, the district court is obliged to conduct an inquiry into the defendant's complaint to determine whether there is good cause for

substitution of counsel." *United States v. Vasquez,* 560 F.3d 461, 466 (6th Cir. 2009).  We review

the court's decision under an abuse-of-discretion standard and consider:

> (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.

*Id*. (quoting *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001)).

The district court scheduled one evidentiary hearing to consider both the substitute-counsel

motion and the plea-withdrawal issue.  Because Gilliam's appeal does not challenge the denial of

his motion to withdraw his plea, we address his claims of error in the denial of substitute counsel,

beginning with the court's observation about Gilliam's untimely filing.  The district court noted that

"approximately ten weeks elapsed between the entry of the guilty pleas . . . and the filing of Mr.

Gilliam's motion" and that Gilliam failed to offer any reason why he failed to file the motion raising

the coercion claim immediately after the plea.  When the district court asked why Gilliam failed to

mention these problems at the time he entered the guilty plea, Gilliam responded that he was "not

really familiar with what I was supposed to do in these cases at all."  The court refused to "play that

game" and told Gilliam that he had "been in court more than practically any defendant I've ever

seen, so don't tell me you're not familiar with court procedures."

The district court adequately investigated Gilliam's complaints about counsel. The court inquired as to why, if Gilliam was dissatisfied with his representation, he had verified his satisfaction at the earlier change of plea hearing. Gilliam could offer no better answer than that he "made a mistake." When asked about his complaints with counsel's representation, Gilliam claimed that he was told "if you take this plea right here, you'll probably get a lesser sentence than what you're going to be facing because you don't have [any] chance of winning." The court, however, explained that it was counsel's proper function to "give you his best estimate of your chance at trial and tell you what the consequences of going to trial are." Though Gilliam faulted his attorney for failing to present certain evidence to the jury, the court repeatedly noted that "[t]he time had not come yet for your lawyer to present your case when you told me that you wanted to plead guilty."

Gilliam's articulation of his complaints about his communications with his existing lawyer—including claims of intimidation—failed to persuade the court. Gilliam alleged that counsel intimidated him into pleading guilty by suggesting he could receive a lesser sentence through a plea. Counsel confirmed that he advised Gilliam "that the outcome would have been horrendous for him had he not chosen to accept the plea in this particular case." The court opined that advising a defendant to plead guilty and avoid a greater sentence simply "is not intimidation." And though Gilliam claimed that the degradation of his relationship with counsel resulted in a total lack of communication, the record reflects that: Gilliam told the court that he had sufficient time to discuss entering the guilty plea with his lawyer, and counsel later met with Gilliam to review the Presentence Investigation Report (PSR). The very nature of his coercion claim—that his lawyer *told* him to take

the plea because of the possible ramifications of refusing to admit guilt—confirms that attorney-client communication occurred.   Thus, all relevant factors militated against Gilliam's request for substitute counsel.

The district court also asked Gilliam's counsel whether he wanted to be heard on the motion for substitute counsel.  Counsel's statement at the hearing was this:

> Your Honor, the advice that we gave Mr. Gilliam was good advice for him in terms of my experience as an attorney and the fact of the sentence that he could potentially serve if convicted on all counts in this indictment.  This was probably the lesser of the, the two avenues to approach the case, and it also didn't take into effect there was a potential finding out there of a continuing criminal enterprise -- and I'm not certain that he, that the court would have found it was a continuing criminal, excuse me, a firearm charge, career criminal, the firearm charge, I misspoke, your Honor; and based upon that, that the outcome would have been horrendous for him had he not chosen to accept the plea in this particular case.
>
> I think I gave him my best advice.  I still think it was good advice.  I was rather appalled by the letter I got, but that's not, hasn't been the first time in 32 years of practicing criminal law that you get one of these kind of letters.  I still think it was good advice for him.

Counsel noted that he disagreed with Gilliam's letter criticizing him, but it was not "the first time in 32 years of practicing criminal law that [he received] one of these kind of letters."  Moreover, as seen by his actions at sentencing—objecting to the PSR, filing a sentencing memorandum, and arguing these objections at the hearing—counsel continued to work with Gilliam for his benefit after the evidentiary hearing.  While the court "fully underst[ood] the position" counsel had been placed

in, it found that Gilliam "established no basis for the replacement of [counsel,] . . . one of the best attorneys in east Tennessee."

Though Gilliam briefs ineffective assistance of counsel issues in conjunction with his substitution-of-counsel arguments, we decline to reach that issue due to the absence of a record developed for consideration of that subject. *See United States v. Sullivan*, 431 F.3d 976, 986 (6th Cir. 2005) (a § 2255 habeas proceeding serves as the proper vehicle for an ineffective assistance of counsel claim).

B.

"We review *de novo* a district court's conclusion that a crime qualifies as a predicate offense for the career-offender designation." *United States v. Skipper*, 552 F.3d 489, 491 (6th Cir. 2009). The district court—properly under the circuit law at the time—applied a career-offender enhancement under U.S.S.G. § 4B1.1 in reliance on Gilliam's Tennessee conviction for reckless endangerment with a deadly weapon. *United States v. Baker*, 559 F.3d 443, 450 (6th Cir. 2009), then changed the circuit's view regarding the Tennessee reckless endangerment statute, holding that it "does not clearly involve the type of purposeful, violent, and aggressive conduct" necessary to categorize all of the offenses covered by the statute as violent, necessitating a remand to develop a record as to whether the defendant in fact committed a crime of violence. *Id*. at 452–53 (quotation marks omitted).

The Government argues that we need not remand in this case because any error in Gilliam's sentencing is harmless because the judge considered a 480-month sentence appropriate in light of the 18 U.S.C. § 3553(a) factors and would have sentenced Gilliam to the same sentence without the career-offender enhancement. "Generally a remand will be warranted when the district court committed an error in computing the Guidelines' recommended sentencing range. A remand will not be required, and an error deemed harmless, however, when we are certain that . . . any such error did not affect the district court's selection of the sentence imposed." *United States v. Anderson*, 526 F.3d 319, 323–24 (6th Cir. 2008) (quotation marks and citations omitted). Though the court found the sentence sufficient, but not greater than necessary, it also confirmed that its assessment included the Guidelines computation as a § 3553 factor. Career-offender status placed Gilliam into an advisory Guidelines range of 210 to 262 months' imprisonment, capped by the 20-year statutory maximum, for an effective range of 210 to 240 months' imprisonment. Without the enhancement, he faced 84 to 105 months. Thus, labeling Gilliam a career offender more than doubled his Guidelines range. Although the district court's explanation of its sentence disclosed that it contemplated a life sentence on the firearm charge and noted that Gilliam's criminal history warranted an upward departure, the court also described in detail the importance of the Guidelines range. Uncertain that the district court would impose the same sentence today in light of *Baker*, we remand for resentencing. *See Baker*, 559 F.3d at 455.

III.

We affirm Gilliam's convictions, vacate his sentence, and remand for resentencing. Because Gilliam was sentenced before we held that Tennessee reckless endangerment was not categorically a crime of violence, the Government may present additional evidence on remand that Gilliam's Tennessee reckless endangerment conviction is a crime of violence. *Id*. at 455 n.10.