NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0158n.06

No. 10-6034

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Feb 08, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff - Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| DANIEL FEARNOW, | ) | **OPINION** |
| | ) | |
| Defendant - Appellant. | ) | |

_____

Before:  MCKEAGUE and WHITE, Circuit Judges; BARRETT, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.**  Defendant-Appellant Dr. Daniel Fearnow appeals his 262-month sentence imposed after he pleaded guilty of intentionally distributing controlled substances and conspiracy to distribute controlled substances.  21 U.S.C. §§ 841(a)(1) & 846.  We **AFFIRM**.

**I.**

In late 2008, Drug Enforcement Agency ("DEA") investigators received information that Fearnow, a doctor working at Wickman Family Medical Care Center ("Wickman" or "the clinic") in Shelby County, Tennessee, was issuing prescriptions to "patients" in exchange for cash.  The DEA solicited confidential informants to engage in audio- and video-recorded transactions with Fearnow from February to October 2009, during which

_____

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

Fearnow prescribed controlled substances for no apparent medical purpose. On October 28, 2009, the government charged Fearnow with one count of conspiracy to distribute controlled substances and eleven counts of intentionally distributing controlled substances. 21 U.S.C. §§ 846, 841(a)(1). On February 12, 2010, Fearnow pleaded guilty to all counts.

According to the Pre-Sentence Report ("PSR"), a patient typically provided Fearnow a list of names of persons who were not present – sometimes with as many as thirty different names – and Fearnow would write prescriptions for the persons named. In exchange, the patient would pay Fearnow a fee, usually between $100 to $150. The patient would then resell the drugs or prescriptions. The investigation revealed that approximately seventy-five percent of Fearnow's "patients" purchased fraudulent prescriptions, resulting in a total of over 25,000 fraudulent prescriptions.

In the usual case, a prescription-seeking patient would enter the clinic and inform a receptionist or nurse that he or she wished to see Fearnow, and the Wickman staff would collect a co-pay for the visit.[1] Fearnow admitted that he sometimes used nurses and student interns to assist him, for example, by taking the list of names from the patient and, after Fearnow had written the prescriptions, exchanging the prescriptions for cash. One confidential source explained that on one occasion, April, a woman appearing to be a nurse, advised that Fearnow was not seeing "that type of patient face-to-face because the police had been heavy in the area." Likewise, a medical assistant explained that he was aware Fearnow

---

[1]Fearnow explained that Nancy Wickman, co-owner of the clinic, or other staff, collected the co-pay fees. Fearnow did not receive any money from the co-pay fees.

was writing illegal prescriptions and that almost everyone in the office had knowledge of or assisted Fearnow with his illegal activity.

The sentencing hearing was held on August 5, 2010. The PSR recommended a four-level enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G") § 3B1.1(a) based on Fearnow's status as an organizer or leader of the criminal conspiracy. Over Fearnow's objection, the district court found the enhancement applicable. Fearnow argued for a downward departure based on alleged sentencing entrapment, which the district court rejected. The district court likewise rejected several other arguments for a downward departure. The district court then considered the § 3553(a) factors. After application of the §3B1.1(a) enhancement for Fearnow's role and a three-level downward adjustment for acceptance of responsibility, the Guidelines recommended a range of 262-327 months' imprisonment. The district court opted for the lowest Guidelines-range sentence – 262 months. This appeal followed.

**II.**

Fearnow contends the district court erred by imposing a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a). This court has struggled over whether to review a district court's application of §3B1.1 deferentially or de novo. *United States v. Young*, 553 F.3d 1035, 1039 (6th Cir. 2009) (noting confusion). Because the district court did not err under either standard, we join prior panels and decline to resolve this issue. *See, e.g., United States v. Walls*, 546 F.3d 728, 734 (6th Cir. 2008).

U.S.S.G. § 3B1.1(a) provides for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was

3

otherwise extensive." In order for this enhancement to apply, the government must prove by a preponderance of the evidence Fearnow's role as a leader or organizer. *United States v. Bennett*, 291 F.3d 888, 897 (6th Cir. 2002). In considering the applicability of an enhancement pursuant to § 3B1.1, courts weigh the following factors:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."

*United States v. Lalonde*, 509 F.3d 750, 765 (6th Cir. 2008); *see also* U.S.S.G. § 3B1.1, cmt., app. n. 4. This court has explained that "a defendant must have exerted control over at least one individual within a criminal organization for the enhancement of §3B1.1 to be warranted." *Lalonde*, 509 F.3d at 765. Hence, "[m]erely playing an essential role in the offense is not equivalent to exercising managerial control over other participants and/or the assets of a criminal enterprise." *Id.* (citation omitted).

Although Fearnow's case is somewhat atypical insofar as he did not have any control over the drugs after he issued the prescriptions, *United States v. Swanberg*, 370 F.3d 622 (6th Cir. 2004), the district court did not err in applying the enhancement. A defendant does not need to satisfy each factor in order for the enhancement to be appropriate. *United States v. Gates*, 461 F.3d 703, 709 (6th Cir. 2006). Fearnow does not dispute that his criminal conduct involved at least five participants. U.S.S.G. § 3B1.1 cmt., app. n.1 (explaining that a "participant" does not need to have been convicted). Additionally, Fearnow exercised managerial authority over staff members at Wickman, including nursing student interns, who assisted him in accomplishing the offenses. *See United States v. Baker*, 559 F.3d 443, 449

(6th Cir. 2009) (noting "a defendant whose sentence is enhanced under § 3B1.1(a) need only supervise or manage one of the five or more other participants") (citation omitted). As the district court explained at the sentencing hearing:

> Within this clinic where the doctor was working were various people who were employees of the clinic but who were nevertheless, accommodating the doctor by taking money, assigning patients, and so forth. . . .
>
> Now, he doesn't have to employ these individuals himself. He doesn't have to have been the manager of the clinic as such; but they were accommodating him and serving him within the clinic is my reading of the facts, the uncontested facts, of the presentence report. . . .
>
> He managed to get [the staff] to do his work for him which is set out in quite a number of places in the presentence report. I've pointed to several of them. And one of the disturbing things is it apparently also includes some medical interns who showed up and were roped into this enterprise as well.

Tr. at 20-28. Although this is not the typical drug-distribution case, Fearnow's argument that he exercised no managerial control is unavailing, and the enhancement nonetheless applies. Finally, contrary to his assertion, Fearnow is not equally or less culpable than the recipients of the prescriptions.

The district court did not err in applying the § 3B1.1(a) enhancement.

### III.

Fearnow next argues that the district court erred by not granting a downward departure based on alleged sentencing entrapment or sentencing manipulation. This court generally does not review a refusal to grant a downward departure unless "the district court (1) improperly computed the guideline range; (2) was unaware of its discretion to depart downward from the guideline range; or (3) imposed the sentence in violation of law or as a result of the incorrect application of the Sentencing Guidelines." *United States v. May*, 399

5

F.3d 817, 827 (6th Cir. 2005) (quotation marks and citation omitted). Fearnow contends that although the government had enough evidence to arrest and convict him early on in the investigation, the DEA continued to conduct controlled buys for the sole purpose of boosting the quantity and type of prescriptions Fearnow sold and thereby increase his sentence.

Assuming such arguments are cognizable in this circuit, *see, e.g., United States v. Guest*, 564 F.3d 777, 781 (6th Cir. 2009) ("The Sixth Circuit has already addressed sentencing entrapment and sentence manipulation . . . and reaffirmed that the Sixth Circuit does not recognize either defense."), the facts of this case do not support a finding of sentencing enhancement or entrapment. As the district court explained, Fearnow's will was not overcome by outrageous government conduct:

> There's no proof of any bad faith in this record by the Government. What you're asking me to do is infer from the lapse of time, the eight months, that there must have been entrapment. Well, "entrapment" is probably not the right word for it; but there must have been a piling on or an attempt to exacerbate the offense on the part of the Government by letting this crime go on.

> An equally fair or perhaps more reasonable inference was that, first, the government didn't feel it had enough proof in this matter of this sort. We have hindsight now. We know Dr. Fearnow immediately confessed his crime, pretty much, and we know he pled guilty to an indictment in this case, but, you know, when you're sitting out there in the field, you have no idea of that.

> The second reasonable inference was the Government wanted to know the scope of what was going on and who was involved. So, it carried out an extensive investigation over time . . . .

> As far as entrapment was concerned, on this record there's no proof that anybody needed to entrap Dr. Fearnow. He willingly, he readily wrote prescriptions at the drop of a hat for money. Anybody could walk in without examination, it appears to me, and get a prescription written for somebody else and extensively, for multiple other people who were never examined.

I don't want to beat that point to death except to say it certainly doesn't look like entrapment to me.

The first response to entrapment is that it's not a factor for downward departure.

My second response is this isn't a case of entrapment.

Tr. at 40-41. *See generally Sosa v. Jones*, 389 F.3d 644, 648-49 (6th Cir. 2004) ("Under this theory, 'sentencing entrapment occurs where outrageous government conduct overcomes the will of a defendant predisposed to deal only in small quantities of drugs, for the purpose of increasing the amount of drugs and the resulting sentence imposed against that defendant.'") (citation omitted).

Fearnow provides no persuasive support for the proposition that the government's conduct here constitutes sentencing entrapment or manipulation, and his arguments are therefore unavailing. We find no error in the district court's refusal to depart.

**IV.**

Lastly, Fearnow challenges the substantive reasonableness of the 262-month sentence the district court imposed. In reviewing for substantive reasonableness, this court considers the totality of the circumstances and inquires whether a district court has abused its discretion. *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010). A sentence is substantively unreasonable if a district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009).

7

The crux of Fearnow's argument is that the district court did not adequately consider and explain the § 3553(a) factors in imposing the sentence. More specifically, Fearnow contends the district court did not give due consideration to his history and characteristics, including that he was raped when he was a young child and his "unblemished employment record as a physician." Fearnow emphasizes – and the district court noted – he is no longer a threat to society and imprisonment will not benefit him and, further, that Fearnow is unusually susceptible to abuse in prison.

Because Fearnow's sentence is within the advisory range of the Guidelines, this court affords it a rebuttable presumption of reasonableness. *See United States v. Christman*, 607 F.3d 1110, 1117 (6th Cir. 2010). A review of the sentencing hearing transcript reveals that the district court considered each of Fearnow's arguments and explained its rationale for rejecting them. The district court also carefully considered the § 3553(a) factors, including the seriousness of the offense and the history and characteristics of the defendant. *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006) (internal quotation marks omitted); 18 U.S.C. § 3553(a).

The district court stated that "these are extraordinarily serious offenses for drug crimes. They are among the most serious I have seen." Tr. at 106. The district court further emphasized the deleterious effect of Fearnow's crimes on the public, noting the number of prescriptions Fearnow sold. *Id.* at 110. The district court also specifically discussed some of Fearnow's positive qualities. Although the district court acknowledged that there would be no benefit to Fearnow from imprisonment and that Fearnow posed no danger to society, the district court also recognized a "strong need for deterrence in this case, which is to say

8

there is a need to prevent others from engaging in this sort of conduct." *Id.* at 117. Ultimately, the district court concluded that the lowest within-Guidelines sentence was appropriate. The district court did not abuse its discretion.

**V.**

For the foregoing reasons, we **AFFIRM** Fearnow's sentence.