**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0555n.06

No. 12-4240

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 07, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Southern |
| PATRICK MAHONEY, | ) | District of Ohio |
| | ) | |
| Defendant-Appellant. | ) | |

Before:      BOGGS and SUHRHEINRICH, Circuit Judges; and MURPHY, District Judge.[*]

BOGGS, Circuit Judge.   Defendant-appellant Patrick Mahoney pled guilty to attempted coercion or enticement of a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b), and distribution of depictions of child pornography via the internet, in violation of 18 U.S.C. § 2252(a)(2).   On appeal, Mahoney challenges his within-guideline sentence of 360 months of imprisonment and 15 years of supervised release, arguing that his sentence is substantively unreasonable and that he was denied his right to allocution at sentencing.   For the reasons that follow, we affirm Mahoney's sentence.

---

[*] The Honorable Stephen J. Murphy III, United States District Judge for the Eastern District of Michigan, sitting by designation.

**I**

The facts concerning Mahoney's underlying conviction were clearly presented by Special

Agent Cameron Bryant at Mahoney's plea proceedings. No party disputes the following rendition

of the facts:

> On February 6, 2012, Detective Brett Peachey of the Franklin County sheriff's office Internet Crimes Against Children task force was working in an undercover capacity and posing as the mother of three minor children, ages 4, 8 and 11.
>
> During the course of the investigation, Detective Peachey engaged in an instant messaging chat via the internet with an individual using the screen name godofeptyness on the Yahoo! Instant Messenger Program. The individual using this screen name was later identified as Patrick Mahoney of Columbus, Ohio.
>
> During the initial conversation and throughout the additional conversations that occurred on the subsequent 16 days, Mahoney raised this issue and discussed in detail his interest in engaging in various sex acts with the children of Detective Peachey's undercover persona. Mahoney also sent various files containing child pornography to Detective Peachey's undercover persona totaling approximately 45 images and 9 videos depicting prepubescent males and females lasciviously displaying their genitals and/or engaged in sexual activity with adult males or other children.
>
> . . .
>
> Although Detective Peachey and Mahoney discussed the possibility of meeting in person several times, no meeting was ever arranged.
>
> Beginning on February 15, 2012, Franklin County sheriff's office Internet Crimes Against Children task force Detective Jeffrey Shook, also acting in an undercover capacity and posing as a 15 year old girl, engaged in internet chat via Yahoo! Messenger with Mahoney. Detective Shook's undercover persona contacted Mahoney via Yahoo! Messenger and stated that she liked his screen name.
>
> . . .
>
> On February 16, 2012, at approximately 11:31 a.m., Mahoney engaged in a chat with Detective Shook's undercover persona and asked what he believed to be the 15 year old female if she was available to meet the following day.

During the course of this chat session, Mahoney asked a fictitious 15 year old female if she was on the pill, where she wanted him to cum, if she had tried anal intercourse, if she liked being licked, if he could take pictures of their sexual acts, and whether she had ever smoked fake pot. Mahoney further requested that she wear a school girl outfit.

The meeting was arranged for February 17, 2012, at 9:00 a.m.

On February 17, 2012, ICAC task force officers and agents set up surveillance outside of the restaurant where Mahoney had arranged to meet the fictitious 15 year old female. Additional officers followed Mahoney as he left his home and then made several stops before arriving at the prearranged meet location in Hilliard, Ohio, in the Southern District of Ohio.

. . .

Upon his arrival, ICAC officers made contact with Mahoney and advised him that he was under investigation.

Mahoney thereafter agreed to speak with officers and provided the following information to them.

He had chatted online with what he believed to be a 15 year girl. He had arrived to meet the 15 year old girl and have sex with her. He intended to use his cell phone to photograph the sexual activity. He had used a peer-to-peer program Gigatribe to download files containing child pornography to a laptop computer, and that [sic] he had more than 100 files containing child pornography on his computer.

Mahoney further admitted that a statement that he had made during the course of a previous chat with Detective Peachey's undercover persona regarding his sexual conduct with his minor stepdaughter was true. Mahoney explained that he had engaged in oral, vaginal and anal intercourse with his stepdaughter from the age of 6 or 7 until she was approximately 10 years old on at least five occasions.

As a result of the investigation and the information provided by Mahoney, agents and officers executed a federal search warrant at the Mahoney residence, 3661 Creekwood Avenue, Columbus, Ohio 43223, in the Southern District of Ohio.

During the course of the search warrant, officers seized one Acer laptop computer, one Toshiba laptop computer, one Micro SD card with reader, and six compact discs.

A forensic preview of the computers and electronic storage of the devices revealed the presence of numerous images and videos of child pornography.

Tr. of Plea Proceedings at 20–23.

At sentencing, both parties agreed that Mahoney had a base offense level of 42 and criminal-history category of I, yielding a sentencing range of 360 months to life. Nonetheless, Mahoney's counsel requested that the district court vary downward to a base offense level of 33 and the attendant sentencing range of 135 to 168 months, arguing that the sentencing factors in 18 U.S.C. § 3553(a), as applied to Mahoney, supported a below-guideline sentence. After defense counsel presented this argument, the district judge informed Mahoney that he could make a statement. Mahoney proceeded to apologize to his family and friends and then to give a long account of his life, beginning with his early childhood and progressing up to the time he left the Marines. Mahoney's discussion emphasized his traumatic discovery of his father's pornography collection at age five and the constant access he had to pornography during his formative years, his sexual interactions with other minors during his preteen and teenage years, the pervasive culture of alcoholism, pornography, and casual sex to which he was subjected while in the Marines, and his combined use of alcohol and marijuana once he left the Marines.

At this point, 14 pages into the allocution, the district judge stopped Mahoney and said that he could continue after the government had a chance to argue against a downward variance. The government called Special Agent Bryant to recite a number of facts pertinent to the § 3553(a) sentencing factors, and defense counsel also cross-examined Bryant.

Afterwards, the district court returned to Mahoney, asking, "[W]hat else do you want me to know?" Mahoney further apologized, and defense counsel made further arguments on Mahoney's behalf. Later in the proceeding, Mahoney also interrupted the judge and was allowed to mention that he had cared for his mentally disabled younger brother for most of his life.

Ultimately the district judge refused to vary downward and sentenced Mahoney to 360 months of imprisonment, the low end of the guideline range, to be followed by 15 years of supervised release. Mahoney now appeals, arguing that his sentence was substantively unreasonable and that he was not allowed full allocution.

## II

### A

We review a district court's sentence "under a deferential abuse-of-discretion standard for reasonableness." *United States v. Stephens*, 549 F.3d 459, 464 (6th Cir. 2008) (internal quotation marks omitted). While this inquiry consists of both a procedural and a substantive component, *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009), Mahoney challenges only the substantive reasonableness of his sentence. "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). "Sentences imposed within a properly-calculated

Guidelines range enjoy a rebuttable presumption of substantive reasonableness on appeal."

*Baker*, 559 F.3d at 448.

**B**

On appeal, Mahoney argues that his sentence was substantively unreasonable because the district judge placed undue weight on Mahoney's admission that he had sexually abused his stepdaughter for a period of approximately three years beginning when she was six or seven. Mahoney argues that "[e]ven though the allegations were not denied, and admittedly are horrific, they are neither part of the offenses of conviction . . . , nor were they relevant conduct of the offenses of conviction." Appellant Br. at 12. Accordingly, Mahoney argues that the abuse of his stepdaughter "should not have been the overwhelming factor related to sentencing in this case." *Id*. at 13.

To begin, we note that the district court was statutorily required to consider "the history and characteristics of the defendant" when imposing Mahoney's sentence. 18 U.S.C. § 3553(a)(1). By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Thus, "sentencing courts have broad discretion to consider various kinds of information" in conformity with this section when calculating a defendant's sentence, *United States v. Watts*, 519 U.S. 148, 151 (1997), and the district court was well within its statutory authority to account for Mahoney's long-term sexual abuse of his minor stepdaughter when imposing his sentence.

Moving on to whether the district court placed undue weight on Mahoney's abuse of his stepdaughter, we have noted that "[a] district court does not commit reversible error simply by attach[ing] great weight to a single factor." *United States v. Thomas*, 437 F. App'x 456, 458 (6th Cir. 2011) (internal quotation marks omitted). When "a district court explicitly or implicitly considers and weighs all pertinent factors, a defendant clearly bears a much greater burden in arguing that the court has given an 'unreasonable amount of weight' to any particular one." *United States v. Thomas*, 395 F. App'x 168, 174 (6th Cir. 2010).

In the instant case, the sentencing transcript clearly indicates that the district judge focused on a number of different factors outlined in 18 U.S.C. § 3553(a) when fashioning Mahoney's sentence. The judge noted that Mahoney had talked a great deal about his history and that he had "a sense of [Mahoney's] background." More specifically, the district judge stated that Mahoney had done "some honorable things" in his life, such as obtaining his GED, serving in the Marine Corps, and caring for his brother, and that Mahoney's appetite for pornography was piqued early and "was met seemingly at every turn in [his] adult life." The district judge did mention Mahoney's abuse of his stepdaughter, stating that Mahoney's "lifetime appetite" for pornography "led to action against [his] stepdaughter, and it is th[is] very type of progression of danger that we are concerned about in these cases." The judge went on, however, to state that "the public needs to be protected from this type of conduct" and that the sentence he was imposing would "adequately deter [Mahoney's] further criminal conduct" and "also provide [Mahoney] drug and alcohol treatment" as well as access to a sex-offender treatment program. Finally, the district judge noted that he was "mindful of the

need to avoid unwarranted sentencing disparities" and that he didn't believe "that this sentence is a disparate sentence," as it was at "the low end of the guideline, which I believe is appropriate." He also found that the sentence was "sufficient, but not greater than necessary," to meet "the statutory purposes."

In sum, the district judge considered numerous factors in arriving at Mahoney's sentence and clearly did not, as Mahoney claims, place "overwhelming" weight on Mahoney's abuse of his stepdaughter. This is especially true given that Mahoney was sentenced within—actually at the bottom of—his guideline range and argues only that the district judge chose not to *vary downward* because of overemphasis on Mahoney's abuse of his stepdaughter. Considering that a within-guideline sentence enjoys a rebuttable presumption of reasonableness, *Baker*, 559 F.3d at 448, Mahoney has not shown that the district judge, who considered a broad variety of different factors, gave unreasonable weight to the abuse of Mahoney's stepdaughter.

## III

## A

Before imposing a sentence, the district court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32 (*i*)(4)(A)(ii). Whether or not a defendant has been denied the right to allocution is an issue of law that we review de novo. *United States v. Haygood*, 549 F.3d 1049, 1054 (6th Cir. 2008).

**B**

"Compliance with Rule 32(i)(4)(A)(ii) requires the sentencing judge to personally and unambiguously invite the defendant to speak in his own behalf." *Ibid*. (internal quotation marks omitted). While a defendant's right to allocution "is not an empty formality," *United States v. Griffin*, 530 F.3d 433, 437 (6th Cir. 2008), this opportunity to address the court also "is not unlimited in terms of either time or content," *United States v. Carter*, 355 F.3d 920, 926 (6th Cir. 2004) (internal quotation marks omitted).

In the instant case, Mahoney does not dispute that the district judge personally and unambiguously invited him to speak on his own behalf. Rather, Mahoney argues that the district judge's interrupting his allocution "derailed" his train of thought and prevented him from further expressing his remorse when he was later given the chance to resume his allocution. Appellant Br. at 16.

Review of the transcript reveals that while the district judge did interrupt Mahoney's allocution, this interruption occurred after Mahoney had delivered a fourteen-page soliloquy of detailed and often rambling facts. When it became apparent that Mahoney's allocution would be quite lengthy, the district judge simply said: "Let me interrupt you there. I'm going to ask the government to give me their piece, then we'll come back to you. Okay?" The judge made perfectly clear that this was a temporary interruption and that Mahoney would again be given the chance to speak. And once the government presented its argument as to why the district judge should not have granted Mahoney a downward departure, the judge allowed Mahoney to resume his allocution, stating, "Mr. Mahoney, what else do you want

me to know?" At this point, Mahoney spoke for another page and a half of transcript, expressing his remorse—statements such as "I have done nothing but loath [sic] myself" and "[t]here's no denying what I did was horrible"—and stating that the crime was his fault—e.g., "I made a choice. I made the wrong choice when it was offered. Nothing I can sit here and do will ever fix that." Clearly, the interruption did not prevent Mahoney from further expressing his remorse as the defense claims.

In addition, when Mahoney finished the second part of his allocution and the district judge began discussing the sentencing factors, Mahoney interrupted and asked the judge if he could speak yet again. The judge granted Mahoney's request, allowing him a third opportunity to address the court. During this final monologue, Mahoney discussed the fact that he had cared for his mentally disabled brother for most of his life, which the district judge said was to his credit. In conclusion, the transcript, when viewed on the whole, shows not only that the district judge personally and unambiguously invited Mahoney to address the court, but also that the judge was extremely accommodating of Mahoney's desire to speak and gave him several extra chances to put forward everything he wanted to say. Thus, Mahoney was provided with an entirely adequate opportunity to exercise his right to allocution.

## IV

For the foregoing reasons, we affirm Mahoney's sentence.